## Richmond

ARCHIE MEARS BENNETT, SR. v. COMMONWEALTH OF VIRGINIA.

April 24, 1972.

Record No. 7850.

Present, All the Justices.

*John W. Wescoat*, for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

Archie Mears Bennett (Bennett or defendant) appeals from a final order entered by the trial court on a jury verdict finding him guilty of arson and fixing his punishment at five years in the penitentiary.

Bennett's assignments of error challenge the admission of evidence resulting from two investigations of the fire. He says that this evidence was the product of illegal searches and should have been suppressed by the trial court. The first investigation, made by two police officers as the fire was being extinguished, resulted in the discovery of a plastic jug containing an inflammable substance. The second investigation was made the day after the fire by Deputy State

Fire Marshal Jessop (Jessop or fire marshal) who went to the home and found evidence which indicated that the fire resulted from arson.

## I

Bennett's home was damaged by fire on Monday night, October 27, 1969. Bennett was alone in the house at the time the fire started.

Paul Hargis (Hargis), Sergeant of the Exmore Police Department, was called to the fire at 10:45 p.m. "to handle the traffic congestion." When Hargis arrived at the scene he observed two separate fires in the home, one in the den and the other in the living room. He smelled a strong petroleum-like odor from the fires. State Trooper Richard Brown (Brown) arrived later while the fire was still smouldering.

Before the fire was completely extinguished both of the officers talked with Bennett who was at the scene. They described him as being "loud," "excited" and "drunk." Bennett, in response to questions by Hargis, told Hargis that he did not know how the fires started and denied that he had set them.

The two officers made a "preliminary investigation" of the fire. They walked around and inspected the house and yard. On a sidewalk near the back door the officers found and seized an uncapped plastic picnic jug which was estimated to be from one to four feet from the rear corner of the house. The picnic jug, which was in plain view, was half full of a "volatile petroleum product similar in nature to kerosene."

Vanessa Jones, Bennett's stepdaughter, identified the plastic container as one which was normally kept behind the house. On Wednesday or Thursday before the fire, however, she discovered the container concealed by dirty clothes in a bathroom closet where the defendant "hid his liquor."

Defendant argues here, as he did in the trial court, that the plastic container should have been suppressed as the fruit of an illegal search of his residence. He maintains that the police officers' only function at the scene of the fire was to direct traffic and that the record reveals their sole purpose in going on the premises was to make an investigation of the fire. It is Bennett's position that such an investigation violated his Fourth Amendment right to be secure in his home against unreasonable searches and seizures. We disagree.

■ People are protected by the Fourth Amendment from unreasonable governmental intrusions only when they have a reasonable ex-

pectation of privacy. *Terry* v. *Ohio*, 392 U.S. 1, 9 (1968). Whether a particular governmental intrusion is reasonable within the meaning of the Fourth Amendment depends upon the particular facts and circumstances of the case. See *Cabbler* v. *Commonwealth*, 212 Va. 520, 522, 184 S.E.2d 781, 783 (1971) and cases cited therein.

We must, therefore, determine whether the defendant had a reasonable expectation of privacy in the area in question and whether there was an unreasonable intrusion by the police officers.

In determining whether the conduct of Hargis and Brown was reasonable or unreasonable, we must look at the circumstances surrounding the inspection which resulted in the seizure of the plastic picnic jug.

The inspection or "preliminary investigation" conducted by Hargis and Brown took place during an emergency while the firemen were still engaged in extinguishing the fires.

The police officers were called there to assist during the emergency. They were present because it was their duty to be there. Thus they were rightfully upon the premises.

While there the officers saw, in plain view, the plastic picnic jug which they seized.

Such an inspection, under the circumstances, was a reasonable intrusion and did not constitute a violation of the defendant's Fourth Amendment rights. See *Camara* v. *Municipal Court*, 387 U.S. 523, 539 (1967).

## II

Jessop received a call on October 27, the night of the fire, and arrived in Nassawadox the following morning to visit the scene. It was established that Jessop was an expert fire investigator and his regular duties included the investigation of suspected arson.

Jessop made his examination of the Bennett property in the daytime without a search warrant. His testimony was clearly unfavorable to the defendant.

Jessop found points of origin of three separate and unconnected fires in the den and living room. His testimony was that two couches, which were two of the points of origin, were upholstered with a "Scotchguard" type fabric which was fire resistant but burned readily when saturated with a petroleum base product. His examination of the electric receptacles and fuse box indicated the fire was not caused by fault in the electrical system.

█ Code § 27-56 requires that the State Corporation Commission

(Commission) examine "into the origin and circumstances of all fires occurring in this state."

In performing this duty the Commission is directed to appoint a Chief Fire Marshal and it may appoint Deputy Fire Marshals.

> "The Commission, and such person or persons as it may appoint, shall have authority at all times of the day, in the performance of the duties imposed by the provisions of § 27-56, to enter upon and examine any building or premises where any fire has occurred. . . ." Code § 27-58.

This statute, authorizing the fire marshal to enter premises where fires have occurred, has not heretofore been construed by this court. The defendant would have us engraft upon the statute the requirement of a search warrant. He cites *Camara* as authority for this proposition.

*Camara* did not concern an issue of suppression of evidence, it arose from criminal prosecution for refusal of admission to the inspector. The intrusion in *Camara* was a routine annual inspection for possible violation of a local (San Francisco) housing code. The court held that such administrative searches "are significant intrusions upon the interests protected by the Fourth Amendment, [and] that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual . . . ." 387 U.S. at 534.

However, the court in *Camara* did not expressly prohibit all warrantless administrative searches. The court recognized that most citizens allow inspection of their property without warrants, thus "it seems likely that warrants should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry." 387 U.S. at 539-40. More importantly the court specifically stated that its decision was not "intended to foreclose prompt inspections, even without a warrant, that the law has traditionally upheld in emergency situations." 387 U.S. at 539.

Jessop's daytime entry, without force, under the authority of the statute was such a permissible inspection as was contemplated by *Camara* and does not violate the Fourth Amendment rights of the defendant.

*Affirmed.*