Argued September 18, affirmed October 12, petition for
rehearing denied November 8, 1972

STATE OF OREGON, *Respondent, v.* BRIGG
MICHAEL YOUNG (No. 14-356), *Appellant.*

501 P2d 1001

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John W. Burgess,* Special Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

THORNTON, J.

Defendant appeals from his conviction for criminal activity in drugs, specifically possession of marihuana. ORS 167.207. He waived jury trial, pled not guilty, and subsequently, after trial, the circuit court found him guilty and sentenced him to a term of two years' imprisonment.

Before trial at a suppression hearing, and during trial, defendant repeatedly, and unsuccessfully, sought the exclusion of certain evidence which he alleged was the product of an illegal search and seizure. Again on this appeal, defendant's sole contention is that this evidence should have been suppressed, and that the search and seizure violated his rights under the Fourth Amendment to the United States Constitution,[1] and Oregon Constitution, Art I, § 9.[2]

The search and seizure at issue occurred during the night of January 9, 1972. Firemen were at defendant's residence fighting against an extensive fire which had swept through part of the house. After apparently extinguishing the fire, the firemen then checked the house, especially the closets, to see that the fire in fact was completely out.

---

[1] U. S. Const. amend IV:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2] Oregon Constitution, Art I, § 9:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

At that time, the occupants of the house were not present. The firemen did not know who the residents were, nor how to contact them. Neighbors observing the fire were equally without information.

Some glass doors, and several windows, had been destroyed in the fire, and the house was open and unsecured.

In this situation, Battalion Chief Heater of the Tualatin Rural Fire Protection District, the chief fire official present, began what he termed an "inventory" of valuables in the house. Chief Heater testified that he conducted this inventory both to protect the valuables, since the house was open, and to protect the firemen from possible accusations of theft from the house.

While looking for any lingering fire, Chief Heater glanced into a doorless closet, and saw what he believed might be a marihuana plant. Also, in his inventory, in addition to some tools and a camera, he found, in a cigar box sitting on a nightstand, both some $20 and a plastic bag containing a vegetable material, which he again suspected was marihuana.

Chief Heater then called the Washington County Sheriff's office. He stated that he called to obtain assistance in investigating the fire, and in securing the house. He also agreed that his call was prompted, in part, by the discovery of what he thought was marihuana.

Deputy Sheriff Havens responded to this request for assistance. He had been driving in his patrol car and received a call from the police dispatcher instructing him to assist the fire department in its investigation. This dispatcher call did not refer to marihuana.

After Deputy Havens entered the house, Chief Heater first showed him a tool chest and tools. They then began a list of valuables in the house.

They next entered a bedroom and Chief Heater indicated the doorless closet and the plant he felt was marihuana. Deputy Havens examined the plant and agreed that probably it was marihuana. Chief Heater also showed the deputy the cigar box, asking him to count the money in it. Deputy Havens did this, and also noticed the baggie apparently containing marihuana.

Deputy Havens and Chief Heater continued their tour of the house, now particularly seeking some indication of the identity of the occupants.

After locating some identification, noting further valuables, such as a television set, and seeing a pipe, which Deputy Havens felt probably would be used to smoke marihuana, the deputy called his office for instructions. He then took samples from the baggie and the plant, which when tested at the office were positive for marihuana.

On the basis of this information, Deputy Havens obtained a search warrant for the house. He returned, and with another deputy, searched the house finding additional apparent marihuana pipes and several more baggies containing vegetable material.

The occupants of the house, the defendant among them, returned somewhat later that night and were arrested by the deputies.

The samples, originally taken by Deputy Havens, were not introduced at trial. However, they were cited in the affidavit used to obtain the search warrant.

The defendant contends that the initial "search" of the house, and the seizure of the samples, violated his rights under the Fourth Amendment and Oregon Constitution, Art I, § 9. He argues that, if this initial search and seizure were invalid, then all the evidence seized under the warrant must be excluded as the "fruit" of that illegal search and seizure under the rule of *Wong Sun v. United States*, 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).

The defendant does not really complain of the initial fire investigation and inventory of valuables conducted by the fire chief. The fire investigation is authorized by statute, ORS 476.210, and in this case was limited to a check for possible lingering fire in the house. The inventory was quite restricted in scope since the fire chief did not rummage through drawers, nor conduct any general search.

Defendant's basic argument is that Chief Heater in fact called the sheriff's office primarily because of the marihuana, and that the subsequent search and seizure was thus invalid.

The record does not clearly establish Chief Heater's motivation in calling the sheriff's office. Deputy Havens had no experience in fire investigation. The fire district rarely called on the sheriff's office after a fire, except to assist with traffic. However, this situation was unusual—the house was open, the firemen could not secure it, and the residents were absent.

██ Yet Chief Heater's motivation essentially is irrelevant. A private citizen, or a police officer, or other public official who is in a place where he has a right to be, and who then observes contraband, has a right, if not an obligation, to act against the offense. *State v.*

*Elkins,* 245 Or 279, 422 P2d 250 (1966); *State v. Johnson,* 232 Or 118, 374 P2d 481 (1962); *State v. Cate,* 7 Or App 509, 491 P2d 627 (1971), Sup Ct *review denied* (1972). Here Chief Heater saw what he believed was marihuana, and even if he called the sheriff only for this reason, the call was still proper.

■ The defendant next contends that the search, and, separately, the seizure, by Deputy Havens were improper. As to the search, defendant relies on *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971).

*Coolidge* held that, although an officer might see contraband in "plain view," his discovery of it must still be "inadvertent" to justify a warrantless seizure. Defendant's reliance on *Coolidge* is misplaced. For whatever reason Chief Heater called the sheriff's office, still, Deputy Havens, until he saw the marihuana plant, knew nothing of contraband. The dispatcher call told him only of a fire investigation, and he entered the house for that purpose.

Deputy Havens' discovery of the marihuana thus was "inadvertent" since he had a "prior justification for an intrusion." *Coolidge v. New Hampshire,* supra at 466.

■ The defendant asserts that Deputy Havens conducted a prohibited general exploratory search for the purpose of finding evidence of crime. The evidence does not support this assertion. Chief Heater showed the deputy only that suspected marihuana which the fireman already had encountered. Deputy Havens did not search further for more contraband. He only discovered the names of the apparent occupants, collected samples to test for marihuana, and then obtained a search warrant before looking for any additional evi-

dence. This conduct hardly constitutes a general exploratory search.

Defendant next asserts that the seizure by the deputy was illegal, citing *State v. Elkins,* supra. *Elkins* held that searches and seizures must be considered separately to determine their reasonableness. However, *Elkins* held only that to seize an item a policeman must have a reasonable belief that it is contraband, or evidence. Here, Deputy Havens had such a reasonable belief, derived from the appearance of the plant and the material in the plastic bag. The seizure was proper.

■ ■ Since the initial search and seizure did not violate the terms of the Fourth Amendment, nor those of Oregon Constitution, Art I, § 9, then the use of the items seized to obtain a search warrant also is not invalid. The evidence was properly admitted at trial. Although the state bears the burden of establishing the reasonableness of a warrantless search, it has met that burden here. *State v. Elkins, supra; State v. Douglas,* 260 Or 60, 488 P2d 1366 (1971).

Affirmed.