Argued August 22, reversed and remanded September 23, 1974

STATE OF OREGON, *Appellant, v.* WALTER
ELLSWORTH FELGER (No. 34127),
*Respondent.*
526 P2d 611

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and Timothy Wood, Assistant Attorney General, Salem.

*Roger J. Leo,* Newport, argued the cause for respondent. On the brief were MacPherson and Carstens and Kurt Carstens, Newport.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Defendant was charged with the crime of arson in the first degree in allegedly setting fire to a dwelling which he was renting in Newport. This is an appeal by the state from an order granting defendant's motion to suppress certain evidence obtained in searching and photographing the unit without a warrant.

The question for decision is: Did the fire and police officials need to obtain either a warrant or express permission from defendant before inspecting the dwelling unit involved?

The challenged suppression order stemmed from a series of inspections of defendant's dwelling which were made by fire and police officials following the fire. For this reason the facts must be set forth in some detail.

Defendant rented the unit, which was one of several connected cottages, on December 2, 1973, on a month-to-month basis. However he was unable to make monthly payments and had arranged with his landlord, Mr. Smith, to pay rent on a weekly basis. At the time of the fire defendant was two days behind in his rent.

The fire occurred on December 18, 1973, at approximately 1:00 a.m. About 9 a.m. the same morning defendant, at the request of Chief McManus, head of the city fire department, came down to the fire station. Chief McManus questioned defendant regarding the fire in order to secure all information necessary to fill out the report to the State Fire Marshal required by ORS 476.210 et seq. After the interview McManus informed defendant that they would have to go to the unit. Because the fire department did not have funds to have photographic equipment, McManus called the city police department to have someone come to the scene of the fire to take pictures. Upon arriving at the scene of the fire, McManus and Officer Reese of the city police department entered the unit. McManus testified that he entered the unit because the defendant told him to go ahead and go on in. Officer Reese never personally received permission from defendant to enter. Defendant testified that he never gave permission to either Officer Reese or Chief McManus. At this time Reese took pictures of the interior; however, due to some malfunctioning of the equipment the pictures did not develop well.

On the afternoon of the same day the Newport Police Department contacted defendant's landlord, Mr. Smith, and requested that he board up the unit. Mr. Smith subsequently encountered defendant inside the unit, apparently inspecting it. Smith told defendant that he (Smith) had been instructed to lock up the unit and that no one should be in the unit.

Defendant never lived in the unit after the fire nor did he ever make an attempt to move back in. The door was virtually destroyed, several windows broken

out and the interior was scorched. In the opinion of Mr. Smith the unit was uninhabitable.

The next day (December 19) defendant and his insurance adjuster, Mr. Reuter, contacted Officer Reese at the Newport Police Department. Reuter asked Officer Reese to accompany them to the scene of the fire. At this time Officer Reese obtained written permission from defendant to search defendant's car, and, he thought, oral permission to enter the unit. Defendant denied ever giving Officer Reese permission to enter. Once inside the unit, Officer Reese made notes regarding the burnt interior of the unit.

On December 27, 1973, Lt. Auger of the Arson Division of the Oregon State Police went to the scene of the fire but did not enter the unit. Lt. Auger returned to the unit on the following day, December 28, accompanied by Officer Reese. Auger and Reese entered the premises pursuant to permission of Smith (the landlord). At this time Auger and Reese took pictures and made observations regarding the origin and cause of the fire but did not remove anything from the building.

On December 31, 1973, Reese contacted defendant and requested defendant to sign a search waiver which defendant refused to do. Thereafter Reese, on advice of the district attorney, sought and obtained permission from the landlord's wife and entered the unit. Officer Reese then seized the remains of clothing and an electric heater.

On January 23, 1974, Lt. Auger again entered the unit. Auger received permission from the landlord but not defendant. At this time Auger took additional photographs and measurements of the fire scene. Auger did not remove anything from the building.

Both Auger and Reese testified that they did not get a search warrant to search the unit because they believed defendant had abandoned the premises.

The trial judge concluded that all inspections of defendant's dwelling except the first visit to the premises by Fire Chief McManus and Officer Reese were illegal and unauthorized, and that all evidence and information obtained thereafter should be suppressed. Defendant filed a cross-appeal from that portion of the suppression order allowing the state to use the evidence and information obtained during the first inspection.

On appeal defendant argues: The various law enforcement officials could not legally enter the residence of defendant after December 18, 1973, at 12 noon, without a warrant to search or a consent to search given by defendant; defendant had a reasonable expectation of privacy as well as a subjective expectation of privacy; the entire investigation and the entries after 12 noon on December 18 were the result of information gathered at a precedent illegal search conducted on or about 9 a.m. on December 18; and that under the ruling in *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963), and *State v. Hogg,* 7 Or App 99, 490 P2d 198 (1971), all this evidence should be suppressed.

The trial judge made no finding on whether defendant had abandoned the premises following the fire.

■ For reasons which follow we are unable to agree with the conclusion of the trial judge, or with defendant's arguments in support thereof, because it is our conclusion from the evidence that defendant actually abandoned the tenancy shortly after the fire. There-

fore his consent was not required. *State v. Maxfield,* 3 Or App 308, 472 P2d 845, Sup Ct *review denied* (1970), *cert denied* 406 US 973 (1972).

We first turn to the provisions of our state fire code.

ORS 476.210 requires all municipal fire department chiefs to investigate all fires within their boundaries "to determine whether the fire was the result of carelessness or design." This section also requires each chief to file a full report of his investigation with the State Fire Marshal's office.

All city fire chiefs are made ex-officio assistants to the State Fire Marshal by ORS 476.060.

ORS 476.070 (1) provides:

"The State Fire Marshal, his deputies or assistants, or any of them, may:

"At all reasonable hours, in performance of the duties imposed by the provisions of ORS 476.030, enter upon and examine any building or premises wherein fire has occurred, and other buildings or premises adjoining or near the same."

■ The foregoing statutes represent the declared public policy of this state with reference to fire investigations.

■ We conclude from the above that Fire Chief McManus was not merely authorized, but was required to go to the dwelling unit in question in order to investigate this fire. ORS 476.210; *State v. Young,* 11 Or App 276, 501 P2d 1001 (1972). Further, it is our conclusion that under the authority granted in the above statutes, it was not necessary for the fire chief to obtain either a warrant or the express permission of defendant or anyone else in order to make the required inspection. Officer Reese's entry to take

photographs at the fire chief's request was by virtue of that same statutory authority.

■■ It appears from the record that during the initial inspection immediately following the fire, the fire chief and Officer Reese saw burn patterns and other evidence in plain view inside the premises indicating that the fire was of suspicious origin. We believe this was sufficient evidence of possible arson to establish probable cause for further investigation. Subsequent entries of the premises by these same officers, as well as the other law enforcement officials, were simply a continuation, and in furtherance of, the first inspection made pursuant to Chief McManus's statutory duty. ORS 476.210.[1] We need not decide whether a warrant

---

[1] ORS 476.210 provides:

"(1) The municipal fire marshals, fire department chiefs, constables and other officers referred to in ORS 476.060 shall investigate the cause, origin and circumstances of each fire occurring in their respective cities, villages or townships, by which property has been destroyed or damaged, and shall make an investigation to determine whether the fire was the result of carelessness or design. The investigation shall be commenced immediately after the occurrence of the fire. The State Fire Marshal may superintend and direct the investigation if he deems it necessary.

"(2) The fire chief of every city, or rural fire protection district shall provide the State Fire Marshal with a full report of every fire occurring within his jurisdiction on a form provided or approved by the State Fire Marshal. Whenever the fire chief of every city under 200,000 population finds any fire is of undetermined or suspicious origin or involves a death or serious injury, the fire chief shall immediately notify the State Fire Marshal or a deputy state fire marshal and shall assemble all known facts and circumstances concerning the fire in an approved report form and shall submit such report to the State Fire Marshal, or the deputy state fire marshal assigned to the territory in which the fire originated. When evidence clearly indicates the cause of fire to be of incendiary origin, he shall also immediately notify the state, county or municipal police agency.

"(3) This section shall not apply to forest lands under the jurisdiction of the State Forester."

was necessary for these subsequent inspections of the premises by fire and police officials because, as we have previously pointed out, defendant had already abandoned the tenancy: The evidence is uncontroverted that at the time of the fire defendant was two days behind in his rent; that he never lived in the unit after the fire; and that he never paid further rent or attempted to move back in. In fact, the unit had been boarded shut by the landlord on instructions from the city police department, and the landlord had instructed defendant that no one should be in the unit. The landlord then had the exclusive right of possession. The landlord and his wife freely gave their consent to the subsequent inspections, searching, photographing and the seizure of the clothing remnants and electric heater.

Neither *Camara v. Municipal Court,* 387 US 523, 87 S Ct 1727, 18 L Ed 2d 930 (1967), nor *See v. City of Seattle,* 387 US 541, 87 S Ct 1737, 18 L Ed 2d 943 (1967), is controlling here for two reasons. First, defendant's tenancy had been abandoned, and second, *Camara* and *See* both involved the routine and general inspection of the entire area of a city for the purpose of insuring compliance with the safety code involved. In neither case had the premises in question been the subject of an actual fire and possible arson. This same distinction has been made by other federal courts in arson prosecutions subsequent to *Camara* and *See. United States v. Gargotto,* 476 F2d 1009 (6th Cir 1973) ; *United States v. Green,* 474 F2d 1385 (5th Cir 1973). Here there was no forcible entry as in *Colonnade Corp. v. United States,* 397 US 72, 90 S Ct 774, 25 L Ed 2d 60 (1970).

In *United States v. Biswell,* 406 US 311, 92 S Ct 1593, 32 L Ed 2d 87 (1972), the Supreme Court upheld

the constitutionality of a statute which authorized inspectorial search of the premises and the records kept by a firearms dealer. There the court distinguished *See* and *Colonnade* and held that the federal statute in question, the Gun Control Act of 1968, posed only limited threats to the gun dealer's expectation of privacy.

The majority of federal and state appellate courts which have considered whether fire and police officials need to obtain a warrant or express permission from the owner or occupant before inspecting a dwelling unit where a fire has occurred have ruled that such prior consent is unnecessary.[2] As the court observed in *United States v. Green,* supra at 1389:

> "* * * The absurdity of requiring the fire investigator to secure a warrant in order to search for the fire's cause is self evident."

■ Defendant's cross-appeal cannot be entertained because ORS 138.060 (3) grants to the state only the right of appeal from an order suppressing evidence. *Dorsey v. Cupp,* 12 Or App 604, 508 P2d 445 (1973).

Reversed and remanded for trial.

LANGTRY, J., concurs in the result.

SCHWAB, C. J., specially concurring.

The question in this case is a constitutional one—the reasonableness of a series of searches under controlling constitutional standards. I am unable to join

---

[2] *See,* United States v. Gargotto, 476 F2d 1009 (6th Cir 1973); United States v. Green, 474 F2d 1385 (5th Cir 1973); State v. Rees, 258 Iowa 813, 139 NW2d 406 (1966); People v. Tyler, 50 Mich App 414, 213 NW2d 221 (1973); People v. Bailey, 42 Mich App 359, 202 NW2d 557 (1972); State v. Vader, 114 NJ Super 260, 276 A2d 151 (1971); Bennett v. Commonwealth, 212 Va 863, 188 SE2d 215 (1972). *Contra:* State v. Buxton, 238 Ind 93, 148 NE2d 547 (1958); People v. Dajnowicz, 43 Mich App 465, 204 NW2d 281 (1972).

in the suggestion that a statutory duty to search is relevant to this constitutional question. Statutory authority does not take precedence over constitutional limitations. *State v. Brothers,* 4 Or App 253, 478 P2d 442 (1970).

On the constitutional question, I join the result reached, i.e., that the search was constitutionally reasonable, on the sole ground that defendant no longer had a sufficient objectively reasonable expectation of privacy in the burned premises: the premises were not habitable, and had been boarded up by the owner; defendant was past due in his rent payments at the time of the fire, and made no rent payments thereafter; the owner of the premises had told defendant that his tenancy was at an end.