PEOPLE v TYLER

PEOPLE v TOMPKINS

Docket Nos. 55396, 55397. Argued September 13, 1974 (Calendar No. 18).—Decided February 14, 1977.

Loren Tyler and Robert Tompkins were convicted by a jury in Oakland Circuit Court, Frederick C. Ziem, J., of conspiring to burn real property. Tyler was also convicted of burning real property and burning insured property with intent to defraud. Physical evidence, taken from a fire-damaged building leased by Tyler for a retail furniture business by police and fire officials without a search warrant in an investigation of suspected arson after the fire was extinguished, was admitted at the trial over defendants' objection. The Court of Appeals, McGregor, P. J., and Quinn and O'Hara, JJ., affirmed (Docket Nos. 15011, 15012). Defendants appeal. *Held:*

1. The primacy of the warrant requirement is well established. Except in certain carefully defined classes of cases a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant. Three kinds of searches have been recognized by the United States Supreme Court: (1) the regulatory search, in which inspection is a crucial part of the regulatory scheme, (2) the administrative search, and (3) the criminal investigation, which seeks evidence to be used against persons in a criminal prosecution.

2. Probable cause for an administrative search is determined by a less rigorous standard than that in criminal investigations. A warrant for an administrative search can be issued pursuant to reasonable legislative or administrative standards designed to permit fire officials to conduct investigations of the cause of

REFERENCES FOR POINTS IN HEADNOTES

[1, 13, 14] 68 Am Jur 2d, Searches and Seizures § 35.

[2] 68 Am Jur 2d, Searches and Seizures §§ 2, 4.

·[3–5, 7–9] 68 Am Jur 2d, Searches and Seizures §§ 15, 68.

[6] 68 Am Jur 2d, Searches and Seizures § 23.

[10, 11] 62 Am Jur 2d, Privacy § 4.

[11, 12] 68 Am Jur 2d, Searches and Seizures § 17.

fires to prevent their occurrence or reoccurrence. The differing probable cause requirements reflect the greater need to protect against the criminal investigative search, which is more extensive and more intrusive than a routine inspection of the physical condition of private property.

3. Probable cause (although measured by a reduced standard for an administrative search) and, absent exigent or other special circumstances (prophylactic regulatory search, plain view, consent), a warrant are required even if the investigation of a fire is to determine the cause of the fire and does not place a person under criminal investigation.

4. Evidence acquired while firefighters are lawfully on the premises putting out a fire is admissible under the plain-view doctrine. If there are exigent circumstances, such as reason to believe that the destruction of evidence is imminent or that a further entry of the premises is necessary to prevent the recurrence of the fire, no warrant is required and evidence discovered is admissible. The exigent circumstance does not, however, justify a search after the emergency no longer obtains and the justification for the exception has ceased to exist.

5. The statute requiring fire and police officials to investigate the causes of a fire, rather than explicitly authorizing searches without a warrant, is silent on the question. To preserve the constitutionality of the statute a warrant requirement should be read into it.

6. Although post-fire searches made solely for the administrative purpose of determining the cause and source of the fire may properly occur under reasonable guidelines and with a reduced standard of probable cause, constitutional requirements cannot be subordinated to a sweeping grant of statutory authority where the investigation turns to the collection of criminal evidence.

7. Simply because a person's home or place of business has been burned does not mean that he has no expectation of privacy regarding whatever of his possessions remains. The property continues to be protected by the law from looters and by the law and the Constitution from the scrutiny of governmental officials. Although the premises may be uninhabitable, personal possessions may remain; unless uninhabitability becomes tantamount to actual abandonment, there may still be a justifiable expectation of privacy.

8. Constitutionally infirm searches and seizures may not be justified by the generalized, undifferentiated interest in protecting the public safety. If there has been a fire, the blaze has been extinguished and the firefighters have left the premises, a

warrant is required to re-enter and search the premises, unless there is consent or the premises have been abandoned. The searches made after the firefighters left were unconstitutional and therefore the evidence obtained was inadmissible.

Reversed and remanded for a new trial.

50 Mich App 414; 213 NW2d 221 (1973) reversed.

1. SEARCHES AND SEIZURES—WARRANT.

The primacy of the warrant requirement for a search and seizure is well established; except in certain carefully defined classes of cases a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant (US Const, Am IV; Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES—WARRANT.

The proscription of "unreasonable searches and seizures" and the warrant requirement must be read in the light of the history that gave rise to the words: the right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals, and the Fourth Amendment has interposed a magistrate between the citizen and police so that an objective mind might weigh the need to invade that privacy in order to enforce the law (US Const, Am IV; Const 1963, art 1, § 11).

3. SEARCHES AND SEIZURES—ADMINISTRATIVE SEARCH—WARRANT—PROBABLE CAUSE.

Probable cause for an administrative search is determined by a less rigorous standard than probable cause in criminal investigations; a warrant for an administrative search to discover the cause of a fire can be issued pursuant to reasonable legislative or administrative standards designed to permit fire officials to conduct investigations of the cause of fires to prevent their occurrence or reoccurrence (US Const, Am IV; Const 1963, art 1, § 11).

4. SEARCHES AND SEIZURES—ADMINISTRATIVE SEARCH—WARRANT—PROBABLE CAUSE.

Probable cause (although measured by a reduced standard for an administrative search for the cause of a fire) and, absent exigent or other special circumstances (prophylactic regulatory search, plain view, consent), a warrant are required even if the investigation of a fire is to determine the cause of the fire and does not place a person under criminal investigation (US Const, Am IV; Const 1963, art 1, § 11).

5. SEARCHES AND SEIZURES—REGULATORY SEARCH—ADMINISTRATIVE
SEARCH—CRIMINAL INVESTIGATION—PROBABLE CAUSE.

The rationale for distinguishing between regulatory, administrative, and criminal searches is the relative intrusiveness of the search; the differing probable cause requirements reflect the greater need to protect against the criminal investigative search, which is more extensive and more intrusive than a routine inspection of the physical condition of private property.

6. SEARCHES AND SEIZURES—WITHOUT WARRANT—PLAIN VIEW.

Evidence of the causes of a fire acquired while firefighters are lawfully on the premises without a warrant is admissible under the plain-view doctrine (US Const, Am IV; Const 1963, art 1, § 11).

7. SEARCHES AND SEIZURES—WITHOUT WARRANT—EXIGENT CIRCUM-
STANCES.

No warrant is required to search the premises where a fire has occurred and evidence discovered of the cause of the fire if there are exigent circumstances, such as reason to believe that the destruction of evidence is imminent or that a further entry of the premises is necessary to prevent the recurrence of the fire; the exigent circumstances exception does not, however, justify a search after the emergency no longer obtains and the justification for the exception has ceased to exist (US Const, Am IV; Const 1963, art 1, § 11).

8. SEARCHES AND SEIZURES—CAUSES OF FIRE—WARRANT—STATUTES—
CONSTRUCTION.

The statute requiring fire and police officials to investigate the causes of a fire, rather than explicitly authorizing searches without a warrant, is silent on the question; to preserve the constitutionality of the statute a warrant requirement should be read into it (US Const, Am IV; Const 1963, art 1, § 11; MCL 29.6; MSA 4.559[6]).

9. SEARCHES AND SEIZURES—WARRANT—ADMINISTRATIVE SEARCH—
CRIMINAL INVESTIGATION—PROBABLE CAUSE.

A search made after a fire solely for the administrative purpose of determining the cause and source of the fire may properly occur under reasonable guidelines and with a reduced standard of probable cause; however, where the investigation turns to the collection of criminal evidence, constitutional requirements cannot be subordinated to a sweeping grant of statutory authority (US Const, Am IV; Const 1963, art 1, § 11; MCL 29.6; MSA 4.559[6]).

10. SEARCHES AND SEIZURES—PRIVACY.

The Fourth Amendment protects people, not places, and what a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection (US Const, Am IV; Const 1963, art 1, § 11).

11. SEARCHES AND SEIZURES—PRIVACY—BURNED PREMISES.

Property which has been burned continues to be protected by the law from looters and by the law and the Constitution from scrutiny of governmental officials; simply because a person's home or place of business has been burned does not mean that he has no expectation of privacy regarding whatever of his possessions remains; although the premises may be uninhabitable, personal possessions may remain, and unless uninhabitability becomes tantamount to actual abandonment, there may still be a justifiable expectation of privacy (US Const, Am IV; Const 1963, art 1, § 11).

12. SEARCHES AND SEIZURES—WITHOUT WARRANT—BURNED PREMISES —PRIVACY.

An entry without a warrant by fire or police officers into burned premises would not invade a constitutionally protected interest in privacy if the owner or occupant of the burned premises abandons the property or if the premises are so completely destroyed that there no longer are recognizable objects of personal property (US Const, Am IV; Const 1963, art 1, § 11).

13. SEARCHES AND SEIZURES—WITHOUT WARRANT—PUBLIC SAFETY.

Constitutionally infirm searches and seizures may not be justified by the generalized, undifferentiated interest in protecting the public safety (US Const, Am IV; Const 1963, art 1, § 11).

14. SEARCHES AND SEIZURES—BURNED PREMISES—WARRANT.

A warrant is required to re-enter and search the premises if there has been a fire, the blaze has been extinguished, and the firefighters have left the burned premises, unless there is consent or the premises have been abandoned (US Const, Am IV; Const 1963, art 1, § 11).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Robert C. Williams,* Chief Appellate Counsel, for the people.

*Bacalis, Kostecke & Associates, P. C.,* for defendants.

LEVIN, J. Loren Tyler and Robert Tompkins were convicted of conspiracy to burn real property.[1] Tyler was also convicted of burning real property[2] and burning insured property with intent to defraud.[3]

The fire occurred in premises leased by Tyler where he conducted a retail furniture business. Tompkins was a business associate of Tyler.

Physical evidence, taken by police and fire officials without a search warrant from the premises after the fire was extinguished, was admitted at the trial over objection.

The question is whether the authorities may enter fire-damaged premises without a warrant after the fire is extinguished for the purpose of investigation and, if discovered, collection of evidence of arson.

The Court of Appeals held that the provisions of the Fourth Amendment and the corresponding provisions of this state's Constitution,[4] prohibiting "unreasonable searches and seizures", do not "apply to the investigation of burned premises to determine whether the fire was the result of arson where some evidence of arson is found during the process of extinguishing the fire". The Court reasoned that "the investigation of a fire to determine if arson has been committed does not place a person under criminal investigation. It places the cause of the fire under investigation."[5]

We reverse and remand for a new trial.

---

[1] MCLA 750.157a; MSA 28.354(1).

[2] MCLA 750.73; MSA 28.268.

[3] MCLA 750.75; MSA 28.270.

[4] Const 1963, art 1, § 11.

[5] *People v Tyler,* 50 Mich App 414, 418, 419; 213 NW2d 221 (1973).

The fire broke out shortly before midnight on January 21, 1970. The fire department arrived soon thereafter. Fire Chief See discovered and seized two plastic containers, one partially filled with a flammable liquid, before the firefighters left. Defendants do not challenge the admissibility of that evidence.

Chief See conferred with Detective Webb of the police department at the scene shortly before the firefighters left. Webb's efforts to take pictures of the interior of the building were unsuccessful.

By 4 a.m. the fire was extinguished. The premises were thereafter left unattended until 8 a.m., when See returned with an assistant fire chief and together they briefly surveyed the interior of the building.

The officials again returned to the scene of the fire between 9 and 9:30 a.m. and discovered a thin linear burn in the carpet of one room. The burn circled the room, went through a door and continued down a stairway to an exit. Pieces of carpet and wood containing the burn marks were removed, and at the trial admitted over objection.

Four days later, on January 26, a sergeant of the Michigan State Police, Arson Section, took photographs of the interior of the building which were lost in the mail. The sergeant returned with Tyler three days later, on January 29, but no evidence was then obtained. The sergeant returned again without Tyler three weeks later, on February 16, and took more pictures and removed part of a fuse found in the building and several pieces of glass, which were admitted in evidence over objection.

The Court of Appeals found that "[c]onsent for the numerous searches was never obtained from

defendant Tyler".[6] While Tyler did accompany the State Police sergeant when he visited the premises on January 29, and may not have objected to that inspection, none of the evidence admitted over objection was obtained at that time.

The people contend that Tompkins, who, in contrast with Tyler, did not have a leasehold interest in the burned premises, has no standing to raise the search and seizure issue.[7] The prosecutor did not raise this issue in the Court of Appeals,[8] and, therefore, it will not be considered.[9]

# I

The primacy of the warrant requirement is well established.[10] "[E]xcept in certain carefully defined

---

[6] *Id*, p 418.

[7] *See Jones v United States*, 362 US 257; 80 S Ct 725; 4 L Ed 2d 697 (1960).

The standing issue is discussed in Allen, *The Wolf Case: Search and Seizure, Federalism and the Civil Liberties*, 45 Ill L Rev 1 (1950); Kamisar, *Illegal Searches or Seizures and Contemporaneous Incriminating Statements: A Dialogue on a Neglected Area of Criminal Procedure*, 1961 U of Ill L Forum 78; Traynor, *Mapp v Ohio At Large in the Fifty States*, 1962 Duke L J 319.

The Supreme Court of California, in *People v Martin*, 45 Cal 2d 755; 290 P2d 855, 857 (1955), allowed a codefendant to raise the search and seizure issue. This rule was reaffirmed in *Kaplan v Superior Court of Orange County*, 6 Cal 3d 150; 98 Cal Rptr 649, 650; 491 P2d 1 (1971). *Cf. United States v Valencia*, 541 F2d 618 (CA 6, 1976). The American Law Institute, in its proposed Model Code of Pre-Arraignment Procedure, has accepted the view that a motion to suppress things seized may be made by a codefendant who may himself be without standing. ALI Model Code of Pre-Arraignment Procedure (Official Draft No. 1, 1972), § 290.1(5).

Our disposition makes it unnecessary to decide whether a codefendant has standing to raise a search and seizure issue.

[8] Defendants' joint brief in the Court of Appeals discusses the question of Tyler's standing, but does not refer to Tompkins' standing. In the people's brief, only Tyler's standing was challenged.

[9] *See Long v Pettinato*, 394 Mich 343, 349; 230 NW2d 550 (1975).

[10] *Vale v Louisiana*, 399 US 30, 35; 90 S Ct 1969; 26 L Ed 2d 409 (1970); *Coolidge v New Hampshire*, 403 US 443, 454–455; 91 S Ct 2022; 29 L Ed 2d 564 (1971); *Jones v United States*, 357 US 493, 497–

classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara v Municipal Court of City & County of San Francisco,* 387 US 523, 528–529; 87 S Ct 1727; 18 L Ed 2d 930 (1967).

The proscription of "unreasonable searches and seizures" and the warrant requirement 　 ;

"must be read in light of 'the history that gave rise to the words'—a history of 'abuses so deeply felt by the Colonies as to be one of the potent causes of the Revolution. * * * ' *[United States v Rabinowitz],* 339 US [56], 69 [70 S Ct 430; 94 L Ed 653 (1950)]. The Amendment was in large part a reaction to the general warrants and warrantless searches that had so alienated the colonists and had helped speed the movement for independence. In the scheme of the Amendment, therefore, the requirement that 'no Warrants shall issue, but upon probable cause,' plays a crucial part. As the Court put it in *McDonald v United States,* 335 US 451 [69 S Ct 191; 93 L Ed 153 (1948)]:

" 'We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. * * * And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the

498; 78 S Ct 1253; 2 L Ed 2d 1514 (1958); *People v White,* 392 Mich 404, 410; 221 NW2d 357 (1974).

situation made that course imperative.' *Id,* at 455–456."
*Chimel v California,* 395 US 752, 761; 89 S Ct 2034; 23
L Ed 2d 685 (1969).[11]

In the development of the probable cause and
warrant requirements, the United States Supreme
Court has recognized three kinds of searches.

The first is the regulatory search, in which
inspection is a "crucial part of the regulatory
scheme". "[I]f inspection is to be effective and
serve as a credible deterrent, unannounced, even
frequent, inspections are essential. In this context,
the prerequisite of a warrant could easily frustrate
inspection; and if the necessary flexibility as to
time, scope, and frequency is to be preserved, the
protections afforded by a warrant would be negligi-
ble." *United States v Biswell,* 406 US 311, 315,
316; 92 S Ct 1593; 32 L Ed 2d 87 (1972).[12] The
Court concluded that "effective regulation of li-
censed firearm businesses is impractical without
resort to a broad inspection power".[13]

Unannounced prophylactic inspections by fire
department officials of theatres, department stores
and other places where large crowds gather may
be necessary to assure that unblocked exits and
adequate fire extinguishers are maintained. In
light of the public nature of the premises and the
relative unintrusiveness of the inspection, a war-
rant may not be required.

[11] *See also Boyd v United States,* 116 US 616, 625–627; 6 S Ct 524;
29 L Ed 746 (1886).

[12] Regulatory searches at or near international borders are accorded
similar treatment. *See United States v Martinez-Fuerte,* 428 US 543;
96 S Ct 3074; 49 L Ed 2d 1116 (1976), upholding a warrantless border
search at a permanent-checkpoint even though there was no reason
to believe the vehicle contained an illegal alien.

[13] Greenberg, *The Balance of Interests Theory and the Fourth
Amendment: A Selective Analysis of Supreme Court Action Since
Camara and* See, 61 Cal L Rev 1011, 1021 (1973).

A second kind of search is the so-called administrative search. Where an investigation is to determine the cause of a fire *(e.g.,* faulty wiring, malfunctioning furnace, natural gas leak) and to prevent such fires from occurring or recurring, the need for a warrant and the standard of probable cause are governed by *Camara, supra.*

In *Camara,* the United States Supreme Court held that a warrant was required for a routine annual inspection for housing code violations, rejecting the argument that "the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior".

"[W]e cannot agree that the Fourth Amendment interests at stake in these [administrative] inspection cases are merely 'peripheral.' It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior. For instance, even the most law-abiding citizen has a very tangible interest in limiting the circumstances under which the sanctity of his home may be broken by official authority, for the possibility of criminal entry under the guise of official sanction is a serious threat to personal and family security. * * * [I]nspections of the kind we are here considering do in fact jeopardize 'self-protection' interests of the property owner. Like most regulatory laws, fire, health, and housing codes are enforced by criminal processes. In some cities, discovery of a violation by the inspector leads to a criminal complaint. Even in cities where discovery of a violation produces only an administrative compliance order, refusal to comply is a criminal offense, and the fact of compliance is verified by a second inspection, again without a warrant. Finally, as this case demonstrates, refusal to permit an inspection is itself a crime, punishable by fine or even by jail sentence." *Camara, supra,* pp 530–531.

In the companion case of *See v Seattle,* 387 US 541; 87 S Ct 1737; 18 L Ed 2d 943 (1967), the Court applied the *Camara* analysis in holding that a warrant was required for an administrative search of business premises.

The Court reaffirmed *Camara's* requirement of a warrant for an administrative search in *G M Leasing Corp v United States,* 429 US 338; 97 S Ct 619; 50 L Ed 2d 530 (1977), where it held a warrantless search by Internal Revenue Service agents, pursuant to a civil statute, unconstitutional.[14]

In *Camara,* the Court also held that probable cause for an administrative search would be determined by a less rigorous standard than in criminal investigations:

" '[P]robable cause' to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building *(e.g.,* a multi-family apartment house), or the condition of the entire area, *but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling." Camara, supra,* p 538 (emphasis supplied).

A warrant for an administrative search could thus be issued pursuant to "reasonable legislative or administrative standards" designed to permit fire officials to conduct investigations of the causes of fires to prevent their occurrence or recurrence.

---

[14] *See, also, Barlow's, Inc v Usery,* 424 F Supp 437 (D Idaho, 1976) (three-judge court), holding a provision in the Occupational Safety and Health Act, 29 USC 657, authorizing the Secretary of Labor "upon presenting appropriate credentials" "to enter without delay and at reasonable times" any business establishment covered by the act, to be unconstitutional.

It is apparent, however, that probable cause (although measured by a reduced standard) and, absent exigent or other special circumstances (prophylactic regulatory search, plain view, consent), a warrant are required even if the investigation of a fire is to determine "the cause of the fire under investigation" and does not "place a person under criminal investigation". The Court of Appeals erred in reasoning to a contrary conclusion.

The third kind of search is the criminal investigation, where officials seek evidence to be used against persons in a criminal prosecution. Such investigations require warrants based on probable cause to believe that evidence of a crime will be found.

The rationale for distinguishing, on the basis of the nature of the search, between regulatory, administrative and criminal searches, is the relative intrusiveness of the search. As stated in *Camara,* "a routine inspection of the physical condition of private property is a less hostile intrusion than the typical policeman's search for fruits and instrumentalities of crime". *Camara, supra,* p 530. The differing probable cause requirements reflect the greater need to protect against the more extensive and more intrusive criminal investigative search.[15]

---

[15] "[A] lesser quantum of evidence is constitutionally required for [administrative] inspections because the search involved is less of an intrusion on personal privacy and dignity than that which generally occurs in the course of criminal investigation. This is a real and meaningful distinction. The concern of the inspector is directed toward such facilities as the plumbing, heating, ventilation, gas, and electrical systems, and toward the possible accumulation of garbage and debris. These matters may be looked into in a much shorter period of time than it often takes to search for evidence of crime, and certainly no rummaging through the private papers and effects of the householder is required. Nothing is seized. A police search for evidence brings with it 'damage to reputation resulting from an overt manifestation of official suspicion of crime.' A routine inspection that is part of a periodic or area inspection plan does not single out any

While it may be no easy task under some circumstances to distinguish as a factual matter between an administrative inspection and a criminal investigation, in the instant case the Court is not faced with that task. Having lawfully discovered the plastic containers of flammable liquid and other evidence of arson before the fire was extinguished, Fire Chief See focused his attention on assembling proof of arson and began a criminal investigation.[16] At that point there was probable cause for issuance of a criminal investigative search warrant.[17]

---

one person as the object of official suspicion. The search in a criminal investigation is made by armed officers, whose presence may lead to violence, and is perceived by the public as more offensive than that of the inspector. Police searches are conducted at all times of the day and night, while routine inspections are conducted during regular business hours. By their very nature and purpose, police searches usually must be conducted by surprise. In contrast, some inspections programs involve advance notice that the inspector will call on a certain date, and an inspector on his rounds will sometimes agree to return at a more convenient time if the householder so requests. This permits the owner or occupant to remove or conceal anything that might be embarrassing to him." LaFave, *Administrative Searches and the Fourth Amendment: The Camara and See Cases,* 1967 Sup Ct Rev 1, 18–20.

[16] The assistant fire chief testified concerning the searches on the morning following the fire:

"*Q.* So your purpose in being in the building was solely and exclusively for investigation and gathering of evidence?

"*A.* Yes, sir.

"*Q.* You were not there for any purpose of fire fighting?

"*A.* No, sir, I was not."

[17] The Supreme Court declared in *Katz v United States,* 389 US 347, 356–357; 88 S Ct 507; 19 L Ed 2d 576 (1967), that it

"has never sustained a search upon the sole ground that officers reasonably expected to find evidence of a particular crime and voluntarily confined their activities to the least intrusive means consistent with that end. Searches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause,' *Agnello v United States,* 269 US 20, 33 [46 S Ct 4; 70 L Ed 145 (1925)], for the Constitution requires 'that the deliberate, impartial judgment of a judicial officer * * * be interposed between the citizen and the police * * * .' *Wong Sun v United States,* 371 US 471, 481–482 [83 S Ct 407; 9 L Ed 2d 441 (1963)]. 'Over and again this Court has emphasized that the mandate of the [Fourth] Amendment re-

As the facts of this case illustrate, requiring a warrant would not burden unduly officials whose duty it is to extinguish fires and investigate their causes. Evidence acquired while firefighters are lawfully on the premises putting out the fire is admissible under the plain-view doctrine.[18] The owner of the property will often consent to a search. In other cases, as here, there will be probable cause to justify the issuance of a search warrant as part of a criminal investigation. If there is insufficient evidence to justify issuance of a warrant as part of a criminal investigation but there is a sufficient basis for an investigation within "reasonable legislative or administrative standards" to determine the cause of the fire, a warrant might issue on that basis.

If there are exigent circumstances, such as reason to believe that the destruction of evidence is imminent or that a further entry of the premises is necessary to prevent the recurrence of the fire, no warrant is required and evidence discovered is admissible.[19]

---

quires adherence to judicial processes,' *United States v Jeffers,* 342 US 48, 51 [72 S Ct 93; 96 L Ed 59 (1951)], and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."

[18] *Cardwell v Lewis,* 417 US 583; 94 S Ct 2464; 41 L Ed 2d 325 (1974); *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971).

[19] *See, e.g., United States v Gargotto,* 510 F2d 409 (CA 6, 1974). The Court declared that where the fire had been recently extinguished and the firefighters were still working in the area where the records were found there were exigent circumstances justifying a warrantless search.

*Similarly see Romero v Superior Court of Los Angeles County,* 266 Cal App 2d 714; 72 Cal Rptr 430 (1968) (search for hidden fires after explosions was reasonable); *United States v Green,* 474 F2d 1385, 1389 (CA 5, 1973) (upholding warrantless search for cause of fire after fire was extinguished, but before fire officials had determined fire's source and were uncertain whether it would recur).

The exigent circumstances exception does not, however, justify a search after the emergency no longer obtains, and the justification for the exception has ceased to exist. We cannot accept the bald assertions of other courts to the contrary.[20]

In the instant case there were no exigent circumstances justifying the searches made hours, days or weeks after the fire was extinguished. As expressed in *G M Leasing Corp, supra,* pp 358–359: "[t]he agents' own actions * * * in their delay for two days following their first entry, and for more than one day following the observation of materials being moved from the office, before they made the entry during which they seized the records, is sufficient to support the District Court's implicit finding that there were no exigent circumstances in this case".

## II

The people argue that the evidence was taken by the fire and police officials pursuant to their statutory duties under MCLA 29.6; MSA 4.559(6), providing:

"The director or any officer is authorized to investigate and inquire into the cause or origin of a fire occurring in this state resulting in loss of life or damage to property, and for that purpose may enter, without restraint or liability for trespass, any building or premises and inspect the same and the contents and occupancies thereof."

The argument is that because the Legislature has

---

[20] *Bennett v Commonwealth,* 212 Va 863; 188 SE2d 215 (1972) (warrantless search occurring day after fire is one that "the law has traditionally upheld in emergency situations"); *People v Kulick,* 57 Mich App 126; 225 NW2d 709 (1974) (search the day after fire was only a continuation of search valid at time of fire).

specifically authorized such searches, they are constitutionally sound.

In *Department of Natural Resources v Seaman,* 396 Mich 299, 315; 240 NW2d 206 (1976), we considered a statute authorizing conservation officers to conduct a search on probable cause without a warrant.[21] We said: "[A] search without a warrant in order to be reasonable under the Fourth Amendment requires more than probable cause— exigent circumstances must also be present. *People v White,* 392 Mich 404; 221 NW2d 357 (1974)." We held that the statute must be construed to preserve its constitutionality, and read it as permitting a warrantless search only where there are exigent circumstances.[22]

We agree with an earlier panel of the Court of Appeals[23] which noted that rather than explicitly authorizing warrantless searches the statute before us is silent on the question. To preserve the constitutionality of the statute a warrant requirement should be read into it. The Supreme Court of Indiana, considering a similar statutory provision, reached the same conclusion. *State v Buxton,* 238 Ind 93; 148 NE2d 547 (1958). Similarly see *G M Leasing Corp v United States, supra.*

Although post-fire searches made solely for the administrative purpose of determining the cause

[21] MCLA 300.12; MSA 13.1222.

[22] "Although MCLA 300.12; MSA 13.1222 does not mention the requirement of exigent circumstances to justify warrantless searches, it is clear that this provision was enacted to cover those situations in which it is not feasible to obtain a warrant. We are 'duty bound' under the Michigan Constitution to construe a statute in such a way as to uphold its validity. *People v Bricker,* 389 Mich 524, 528; 208 NW2d 172 (1973). Consequently, we construe MCLA 300.12; MSA 13.1222 as, *inter alia,* requiring the presence of exigent circumstances before conservation officers are authorized to conduct warrantless searches under the act." *Department of Natural Resources v Seaman,* 396 Mich 299, 315; 240 NW2d 206 (1976).

[23] *People v Dajnowicz,* 43 Mich App 465; 204 NW2d 281 (1972).

and source of the fire may properly occur under reasonable guidelines and with *Camara's* reduced standard of probable cause, where the investigation turns to the collection of criminal evidence constitutional requirements cannot be subordinated to a sweeping grant of statutory authority.[24]

Even if the search is administrative, under *Camara* a warrant is required. To justify a warrantless search by labelling it "administrative" *(Bennett v Commonwealth,* 212 Va 863; 188 SE2d 215 [1972]) is therefore erroneous.

While the Legislature is not free to generally except searches and seizures for evidence of arson from the constitutional limitation, it may, as outlined in *Camara,* prescribe, in a narrowly drawn statute, reasonable standards to facilitate the issuance of administrative search warrants to determine the causes of fires to prevent their occurrence or recurrence.

## III

The people contend alternatively that there is no reasonable expectation of privacy in property that has been burned. We can accept the premise of that contention, "the Fourth Amendment protects people, not places [and that] [w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection", *Katz v United States,* 389 US

[24] We are unpersuaded by decisions of courts in other jurisdictions upholding warrantless post-fire searches on the ground that the searches were made pursuant to statutory authority. *Stone v Commonwealth,* 418 SW2d 646, 652 (Ky, 1967), *cert den* 390 US 1010; 88 S Ct 1259; 20 L Ed 2d 161 (1968); *State v Rees,* 258 Iowa 813; 139 NW2d 406 (1966) (relying on *Frank v Maryland,* 359 US 360; 79 S Ct 804; 3 L Ed 2d 877 [1959], which authorized civil inspections without warrants; *Frank* was overruled by *Camara, supra,* in 1967).

347, 351; 88 S Ct 507; 19 L Ed 2d 576 (1967), without accepting the conclusion.

Simply because a person's home or place of business has been burned does not mean that he has no expectation of privacy regarding whatever of his possessions remains. A fire is not an invitation to any or all to enter to satisfy their curiosity or for any other purpose. It does not open the property to public scrutiny. The property continues to be protected by the law from looters and by the law and the Constitution from scrutiny of governmental officials.

Personal papers, family heirlooms and other objects may survive the fire; the owner has a justifiable interest in protecting such property. Although the premises may be uninhabitable, personal possessions may remain undestroyed; unless uninhabitability becomes tantamount to actual abandonment, there may still be a justifiable expectation of privacy.[25]

Some courts have upheld warrantless post-fire searches on the theory that there is no reasonable expectation of privacy in the burned premises[26] or that the premises have become uninhabitable.[27] We agree that a warrantless entry would not invade a constitutionally protected interest in privacy if the

---

[25] "It seems that the primary defect with 'habitability' as a standard for determining fourth amendment protection where arson investigations are involved is that it should not be the only factor to receive consideration. Other factors which seem to bear on an expectation of privacy are: the amount of personal property remaining on the premises, the extent of destruction caused by the fire, the possibility of danger to the community from the fire and affirmative acts on the part of the individual demonstrating the existence, or lack thereof, of any expectation of privacy. It is also suggested that courts consider these other factors along with 'habitability' in determining whether fire-damaged premises are entitled to fourth amendment protection." Note, *Arson Investigations and the Fourth Amendment*, 30 Wash & Lee L Rev, 133, 145, fn 86 (1973).

[26] *State v Murdock*, 160 Mont 95, 103; 500 P2d 387, 391 (1972).

[27] *State v Vader*, 114 NJ Super 260; 276 A2d 151 (1971).

owner or occupant of the burned premises abandons the property[28] or if the premises are so completely destroyed that there no longer are recognizable objects of personal property. The record does not factually support a conclusion that Tyler had abandoned the fire-damaged premises.

## IV

Finally, the people contend that warrantless post-fire searches can be justified by the public interest in preventing fires, saving lives, protecting property and preventing insurance fraud.

There is a public interest in preventing and solving all crimes against persons or property. Constitutionally infirm searches and seizures may not be justified by the generalized, undifferentiated interest in protecting the public safety.

The United States Supreme Court, in distinguishing between regulatory, administrative and criminal investigative searches, has provided a framework for achieving a workable balance between the need for investigation of the causes of fires and protection of the individual's right of privacy.

If there are exigent circumstances, or the evidence is in plain view, no warrant is required. Nor is a warrant required for a prophylactic regulatory inspection of public places.

If there has been a fire, the blaze extinguished and the firefighters have left the premises, a warrant is required to reenter and search the premises, unless there is consent or the premises have been abandoned.

---

[28] *State v Felger,* 19 Or App 39, 46–47; 526 P2d 611, 615 (1974): "We need not decide whether a warrant was necessary for these subsequent inspections of the premises by fire and police officials because * * * defendant had already abandoned the tenancy".

The standard of probable cause will vary depending on the nature of the post-fire search. If the authorities are seeking evidence to be used in a criminal prosecution, the usual standard (probable cause to believe that evidence of a crime will be found) will apply. Where the cause is undetermined, and the purpose of the investigation is to determine the cause and to prevent such fires from occurring or recurring, an administrative search may be conducted pursuant to a warrant issued in accordance with reasonable legislative or administrative standards or, absent their promulgation, judicially prescribed standards; if evidence of wrongdoing is discovered, it may, of course, be used to establish probable cause for the issuance of a criminal investigative search warrant or in prosecution.

The warrant requirement protects individual privacy from unrestrained exercise of governmental power. Enforcement of the principle that warrantless searches are an exception, justified only by special circumstances, and that warrants may issue only on a determination by a neutral magistrate of probable cause, albeit in this context a varying standard of probable cause, can be harmonized with effective law enforcement.

We hold that the warrantless searches were unconstitutional and that the evidence obtained was therefore inadmissible.

Reversed and remanded for a new trial.

KAVANAGH, C. J., and WILLIAMS and FITZGERALD, JJ., concurred with LEVIN, J.

COLEMAN, J., concurred in the result.

RYAN and BLAIR MOODY, JR., JJ., took no part in the decision of this case.