M. Michael Potoker, J.
Defendant seeks to preclude testimonial evidence of observations made by two fire marshals and photographs taken at the time as to the condition of his apartment following a fire on the ground that said evidence was obtained as a direct result of an unconstitutional search.
The instant indictment charging defendant with committing the crimes of arson in the second degree, reckless endangerment in the first degree and assault in the third degree stems from a fire that occurred in a building located at 7915 Fifth Avenue, Brooklyn, early in the morning of August 29, 1975. Defendant was a tenant in the building and was in occupation of his apartment when the fire occurred although an order of dispossess issued by the Civil Court remained unexecuted at the time. He was arrested about eight hours after the fire was brought under control.
Defendant pleads that his right to privacy in his property is protected by the Fourth Amendment prohibition against unreasonable searches and seizures (Katz v United States, 389 US 347). He also directs the court’s attention to People v Tyler (399 Mich 564) which held that police and fire officials who enter a recently burned building to gather evidence of arson come within the Fourth Amendment’s warrant requirement regardless of whether the entry is in the nature of a criminal investigation or has the administrative purpose of determining the cause and source of the fire. The court did, however, acknowledge that a lesser standard of probable cause applies to an administrative entry than to an entry for the purpose of a criminal investigation.
The testimony of Fire Marshal Thomas Breheny, the People’s only witness at the hearing, is summarized as follows: He arrived at 7915 5th Avenue between 12:30 and 1:00 p.m. to investigate a suspicious fire which had occurred there earlier that day at or about 4:00 a.m. The fire was extinguished at 6:30 a.m. and brought under control about 8:00 a.m. The purpose of his assignment was to determine the origin of the fire since the cause was unknown at the time of his arrival. He was accompanied by another fire marshal during his inspection. He entered defendant’s apartment, which he found open since the door had apparently been destroyed in the fire. He did not conduct chemical or other tests. From his observa *90 tian he found that the fire originated in two places in said apartment and on the steps leading up to the second floor landing.
His entry was predicated under the Administrative Code of the City of New York (§ 488 [2J-1.Q), which commands fire marshals to investigate, examine and inquire into the following matters: the origin, detail and management of fires in the city, particularly of supposed cases of arson, incendiarism, or fires due to criminal recklessness.
In Tyler (supra), fire officials returned to the scene of the fire on several occasions, twice within hours after the fire was extinguished and thereafter from four days to three weeks later. Their observations, photographs taken and physical evidence seized were admitted in evidence at the trial over objection, a ruling reversed by the State’s Supreme Court. The admissibility of observations and the discovery and seizure of plastic containers filled with a flammable liquid before the firefighters left was not challenged by defendant, conceding that evidence acquired while firefighters are lawfully on the premises putting out the fire is admissible under the plain-view doctrine.
If for no other reason, the case at bar is clearly distinguishable from Tyler. In Tyler the court stated (p 582): "Although the premises may be uninhabitable, personal possessions may remain undestroyed; unless uninhabitability becomes tantamount to actual abandonment, there may still be a justifiable expectation of privacy.”
In the case before the court, the second and third floors of the building, including defendant’s apartment, were destroyed by the fire. The building was no longer habitable. All the windows of the second and third floors and the defendant’s apartment including the door were destroyed.
The defendant no longer had a "sufficient objectively reasonable expectation of privacy in the burned premises.” (State of Oregon v Felger, 526 P2d 611, 613; see, also, Castle v State of Florida, 305 So 2d 794 [Fla]; Steigler v Anderson, 496 F2d 793.)
The search of the burned-out apartment was not therefore interdicted by the Fourth Amendment (Katz v United States, 389 US 347, supra) because a reasonable expectancy of privacy no longer existed.
*91 Uninhabitability did become tantamount to actual abandonment.
Nor does this court subscribe to the conclusion reached by the Michigan Supreme Court in Tyler (supra, p 579), which read a warrant requirement into a State statute that authorizes fire officials with the responsibility of investigating fires "to enter, without restraint or liability for trespass any building or premises and inspect the same and the contents and occupancies thereof.”
In Camara v Municipal Ct. (387 US 523, 529) and See v City of Seattle (387 US 541), the cases on which Tyler heavily relies, the Supreme Court did not expressly prohibit all warrantless administrative searches. The court stated in Camara (p 539) that its decision was not "intended to foreclose prompt inspections, even without a warrant, that the law had traditionally upheld in emergency situations.” (See Bennett v Commonwealth of Virginia, 212 Va 863; United States v Gargotto, 476 F2d 1009; United States v Green, 474 F2d 1385, cert den 414 US 829; State of Oregon v Felger, 526 P2d 611, supra.)
When there is an emergency, such as a fire, no warrant is required (Steigler v Anderson, 496 F2d 793, supra). Nor does a prompt inspection by a fire marshal to ascertain the cause of a fire require a warrant (Bennett v Commonwealth, supra; Bailey v People, 493 F2d 1218; People v Gargotto, supra; State of Iowa v Rees, 258 Iowa 813).
"The absurdity of requiring the fire investigator to secure a warrant to search for the fire’s cause is self evident.” (United States v Green, 474 F2d 1385, 1389, supra.)
The fire marshals’ investigation was conducted promptly, within four hours after the fire was brought under control.
The duty of a fire marshal to investigate the cause of a fire is analogous to the facts found in People v Neulist (43 AD2d 150).
In Neulist the police were called to the defendant’s home when the body of his wife was discovered in her bed, her head surrounded by blood. They initially thought she had died of an aneurism. She was taken to the medical examiner’s office and a policeman was left on the scene and instructed to allow no one to enter the bedroom where the body was found. It was determined within an hour that she had a bullet in her brain. The police then returned to the house and various items of *92 evidence were discovered in the house including the room where the body was found.
Writing for a unanimous court, Justice Irwin Shapiro found the initial entry valid because: (1) the police had been called to the scene; (2) the general obligation of the police to assist people in distress or under exigent circumstances; and (3) that the entry was pursuant to valid statutory authority (Nassau County Government Law, § 2101; L 1936, ch 879, as amd [duty of medical examiner to fully investigate the facts concerning the circumstances of death]).
It also upheld the right of the police to return to the scene, this time to search the premises, as a continuation of the initial investigation.
A fire may be a crime as may the death of an individual. The New York City Administrative Code provides that the fire marshal has a duty to investigate a fire. Similarly the police and medical examiner have a duty to investigate a death.
In the light of a serious fire it is logical to presume that evidence of the cause of the fire might still be found on the premises or what was left of it, after the fire was extinguished. The fact that there was a short gap in time between the last fireman leaving the scene and the arrival of the fire marshal does not signify in any way that the investigation of the fire had been completed.
The statutory mandate to investigate a fire and the continued fire scene investigation serve to lend authority to the fire marshals’ presence at the scene. The court finds the fire marshals’ entry reasonable under the circumstances and their observations and photos taken are admissible in evidence.
The defendant’s motion to suppress is accordingly denied.