**STATE of Iowa, Appellant,**

**v.**

**Elaine Sue HANSEN, Appellee.**

**No. 63011.**

Supreme Court of Iowa.

Dec. 19, 1979.

Thomas J. Miller, Atty. Gen., Kathy A. Krewer and Richard L. Richards, Asst. Attys. Gen., for appellant.

Richard L. Mock, of Underhill & Underhill, Onawa, for appellee.

Considered by LeGRAND, P. J., and REES, UHLENHOPP, ALLBEE and LARSON, JJ.

REES, Justice.

This is an appeal by the State, under our discretionary review, from a ruling of the trial court suppressing certain evidence in a prosecution for the crime of first degree arson under section 712.2, Code Supp.1977. We affirm in part, reverse in part, and remand for further proceedings.

On February 1, 1978 a fire occurred at the house rented and occupied by the defendant, Elaine Sue Hansen, and her family in rural Monona County. Damage was not extensive and the fire was extinguished that morning. On the same day an unsuccessful attempt was made by the authorities to contact Ronald Evilsizer, regional deputy state fire marshal, regarding investigation of the fire. Early the following afternoon agent Evilsizer went to the fire scene, accompanied ·by the Monona County sheriff and the landlord of the premises, to conduct an inquiry into the cause of the fire as permitted by sections 100.1(2) and 100.2, The Code, 1977. No search warrant had been obtained; nor did the defendant consent to the search of the premises. During the course of the inspection, the defendant arrived at the house and cooperated with Evilsizer, answering questions. Photographs were taken and specimens were gathered at the scene.

On February 8 the defendant, as arranged by her family and agent Evilsizer, met with the investigator and the assistant county attorney to discuss the possibility of medical treatment for the defendant as an alternative to criminal proceedings. At no time were *Miranda* warnings given to the defendant to apprise her of her constitutional rights.

On March 23 agent Evilsizer again entered the house, without a search warrant or the consent of the defendant, and took a specimen of the carpet which had been partially burned in the fire.

A grand jury indictment was filed against the defendant on April 17, 1978 and she was arraigned later the same day. On October 26 defendant filed a motion to suppress evidence gathered at the fire scene and of all conversations between her and the law enforcement officials. The state resisted, alleging the motion was untimely under Iowa R.Crim.P. 10(4), which requires that such motions be filed within thirty days of arraignment in the absence of good cause for delay. The court ruled that the motion complied with Iowa R.Crim.P. 11(1), which deals specifically with motions to suppress, in that it was filed prior to trial. The trial court also sustained defendant's motion to suppress. From these rulings the State made application for discretionary re-

view, which we granted. *See* Iowa R.Crim.P. 11(2).

The State presents the following issues for our review:

(1) Did the trial court err in sustaining defendant's motion to suppress over the State's objection that it was untimely under Iowa R.Crim.P. 10(4)?

(2) Did the trial court err in applying *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), retroactively to this case?

(3) Did the trial court err in its application of *Michigan v. Tyler* to the facts of this case?

(4) Did the trial court err in applying *Miranda v. Arizona* in this case due to the lack of "custodial interrogation"?

■ I. The State first contends that the trial court erred in sustaining defendant's motion to suppress since it failed to comply with Iowa R.Crim.P. 10(4). Rule 10 does apply to motions to suppress. *See* Iowa R.Crim.P. 10(2)(c). Rule 10(4) places the following restriction on such motions: "Motions hereunder, except a motion for a bill of particulars, shall be filed either within thirty days after arraignment or prior to the impaneling of the trial jury, whichever event occurs earlier, unless the period for filing is extended by the court for good cause shown". Initially it would appear that the time limitation contained in rule 10(4) is applicable and that it was not met in this case.

Rule 11, on which the trial court based its sustention of the motion, involves only motions for the suppression of evidence and states in relevant part: "The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was unaware of the factual grounds for the motion; but the court in its discretion may entertain the motion at the trial or hearing, upon good cause supported by affidavit". A plain reading of rule 11 tends to support the ruling of the trial court, since it sets only a pretrial deadline before good cause need be shown.

We conclude the trial court was correct in applying rule 11 to the case at bar. Rule 11 involves only motions to suppress evidence, while rule 10 governs all pretrial motions and pleadings. Rule 11 is clearly the more specific provision. Under our canons of construction we will give deference to the more specific of conflicting provisions. *E. g., Berger v. General United Group, Inc.*, 268 N.W.2d 630, 638 (Iowa 1978); *State v. Thompson*, 253 N.W.2d 608, 609 (Iowa 1977). Rule 11 is clear and unambiguous as to the time constraints it would place upon motions to suppress. Rule 10(2) is consistent with rule 11 in that it provides that motions to suppress must be made prior to trial. To the extent that the general language of rule 10(4) is inconsistent with the terminology of rule 11, rule 11 must be given effect.

The result we reach in resolving this ambiguity in our rules of criminal procedure is supported by practical considerations, as evidenced by the facts of this case. Although the motion to suppress was filed approximately six months following the defendant's arraignment, it was filed one week following the return of agent Evilsizer's deposition, which contained much of the factual basis for the motion to suppress. Often, as here, the factual data upon which suppression would be based is not available until after discovery has been initiated and completed.

We therefore hold that motions to suppress need comply only with the time constraints imposed by Iowa R.Crim.P. 11, rather than those generally applicable to pretrial motions under rule 10(4).

II. The State next asserts the trial court erred in retroactively applying *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), a case decided subsequent to the searches in question. We find no indication in the record of such an argument having been made to the trial court. In briefing the issues of the suppression hearing on appeal both parties argued the merits of the *Michigan v. Tyler* decision as it related to the searches of defendant's home. We have consistently held that issues not raised before the trial court cannot

be raised for the first time on appeal. *See, e. g., Beitz v. Horak,* 271 N.W.2d 755, 759 (Iowa 1978); *Davidson v. Van Lengen,* 266 N.W.2d 436, 439 (Iowa 1978). We therefore assume *Michigan v. Tyler* is applicable and address the remaining issues.

III. The State next contends that the trial court erred in suppressing all evidence taken by agent Evilsizer from the Hansen home. It focuses its argument on the search which took place the afternoon of the day following the fire, contending that *Michigan v. Tyler* would not require a warrant for that entry. We disagree.

Before reaching the merits of the State's argument, we wish to address several preliminary matters: the nature and extent of defendant's privacy interest in the property at the time of the searches; and the viability of the holding of this court in *State v. Rees,* 258 Iowa 813, 139 N.W.2d 406 (1966).

■ At the time of the searches, the Hansen family was not living at the fire scene, but was temporarily housed with relatives several miles away. Much of the Hansens' personal property remained in the dwelling, as the damage from the fire was not extensive. The Supreme Court in *Michigan v. Tyler,* 436 U.S. at 506, 98 S.Ct. at 1948, 56 L.Ed.2d at 495–96, found the presence of personal effects to give rise to a reasonable and constitutionally protected expectation of privacy. As was noted in *People v. Tyler,* 399 Mich. 564, 582, 250 N.W.2d 467, 476 (1977):

> Simply because a person's home or place of business has been burned does not mean that he has no expectation of privacy regarding whatever of his possessions remains. A fire is not an invitation to any or all to enter to satisfy their curiosity or for any other purpose. It does not open the property to public scrutiny. The property continues to be protected by the law from looters and by the law and the constitution from scrutiny of governmental officials.

Personal papers, family heirlooms and other objects may survive the fire; the owner has a justifiable interest in protecting such property.

Such is clearly the situation here.

We note that some jurisdictions have adopted a "habitability" standard in determining whether reasonable expectations of privacy exist. *See State v. Murdock,* 160 Mont. 95, 500 P.2d 387 (1972); *State v. Vader,* 114 N.J.Super. 260, 276 A.2d 151 (1971); *People v. Calhoun,* 90 Misc.2d 88, 393 N.Y.S.2d 529 (1977). This position seems to us to be unduly narrow and not representative of the *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), reasonable expectation of privacy standard. *See generally* 3 W. LaFave, *Search and Seizure* § 10.4, at 260–62 (1978); Note, 30 Wash. & Lee L.Rev. 133 (1973). To the extent that the "habitability" standard is inconsistent with our above-stated position, we do not adopt it. In so doing we reserve general comment upon those instances where fire damage is much more extensive, finding a case-by-case determination of privacy expectations to be most appropriate.

■ Closely interrelated with the State's retroactivity argument is its contention that *State v. Rees* is controlling of the search issue before us. In *State v. Rees,* 258 Iowa at 825, 139 N.W.2d at 413, this court equated a legislative enactment, *see* § 100.10, The Code,[1] permitting warrantless searches with a search pursuant to a warrant issued by a magistrate. That holding was based in part on the decision of the United States Supreme Court in *Frank v. State of Maryland,* 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), which held that a health officer under the authority of a city ordinance could make warrantless entries onto private property at reasonable times for the purpose of inspections for compliance with health and safety requirements. *Frank* was subsequently overruled, regarding the necessity of obtaining a search war-

---

1. "The state fire marshal, and his designated subordinates, in the performance of their duties, shall have authority to enter any build-

ing or premises and to examine the same and the contents thereof."

rant prior to an administrative search, in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). *See* 1 K. Davis, *Administrative Law Treatise* § 4.7 (2d ed. 1978). A statutory authorization for an administrative search, absent extenuating circumstances, is not a constitutionally adequate substitute for a search warrant issued by a magistrate. To the extent that *State v. Rees* stands for a contrary proposition, it is overruled.

The showing of probable cause necessary to obtain a search warrant to make a fire scene inspection for administrative, rather than criminal, purposes is of course different from the traditional formulation of probable cause in the warrant context. The relevant considerations are set forth in *Michigan v. Tyler*, 436 U.S. at 507–08, 98 S.Ct. at 1949, 56 L.Ed.2d at 497, and do not require further elaboration.

 No warrant was secured prior to inspecting the fire scene on the day following the fire. Nor was a valid consent obtained. *See State v. Smith*, 178 N.W.2d 329, 332 (Iowa 1970). Unless based upon a showing of exigent circumstances, the evidence from the search was properly suppressed.

 The State argues that the search the afternoon following the fire falls within "actual continuation" excepting language of *Michigan v. Tyler*, 436 U.S. at 510–11, 98 S.Ct. at 1951, 56 L.Ed.2d at 499. There is little dispute that the existence of a fire provides sufficient exigency to permit a warrantless entry of a dwelling place. *E. g., Steigler v. Anderson*, 496 F.2d 793 (3d Cir. 1974); *United States v. Perez*, 440 F.Supp. 272 (N.D.Ohio 1977); *People v. Ramsey*, 272 Cal.App.2d 302, 77 Cal.Rptr. 249 (1969). The issue thus becomes whether the inspection for the cause of the fire is an "actual continuation" of the permissible entry to fight the fire. As the United States Supreme Court summarized its holding in *Tyler*, 436 U.S. at 511, 98 S.Ct. at 1951, 56 L.Ed.2d at 500:

> [W]e hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches.

Our examination of the record leads us to conclude that agent Evilsizer's visit was not an "actual continuation" of a valid entry. The fire was extinguished and the firemen had left the scene during the morning of February 1. Agent Evilsizer did not arrive to commence his investigation until the following afternoon. No investigation into the cause of the fire had been initiated on February 1 to be continued on the next day. The inspection by the regional deputy fire marshal thus constitutes an additional entry under the *Tyler* standard.

Thus this case is factually distinguishable from *Tyler*. There the investigation was begun as the fire was being extinguished and was discontinued for only a few hours early in the morning due to poor visibility. Here, more than twenty-four hours had passed from the time the fire was extinguished until the investigation was launched. No "actual continuation" can be found on these facts.

We further note the nonexistence of exigent circumstances which may have justified a warrantless entry. The fire was not of major proportions and the fact that the building was left unattended until the fire marshal's arrival indicates that reignition was not a major concern. *See United States v. Green*, 474 F.2d 1385, 1388–89 (5th Cir. 1973).

We hold the trial court was correct in suppressing evidence gathered by the fire marshal during his warrantless inspections of the fire site. The searches were sufficiently attenuated from the entry to extinguish the fire as to require resort to the administrative warrant procedure.

IV. The State's final contention involves the failure of agent Evilsizer to give the defendant warnings as to her constitutional rights (*Miranda*) prior to questioning her

about the fire. Mrs. Hansen had been questioned by the fire marshal during his initial visit to the fire scene and again at the meeting arranged by defendant's father-in-law and agent Evilsizer at the Monona County Public Safety Center on February 8. The assistant county attorney, and at times the county attorney, were present at this meeting. The State contends that these are not instances of "custodial interrogation" within the meaning of the *Miranda* decision and that the trial court therefore erred in suppressing statements made by the defendant at these interviews. We find merit, in part, in the State's argument and reverse the trial court as to statements made by the defendant at the initial questioning.

■ We have held that *Miranda* warnings must be given when an individual is subjected to "custodial interrogation", which has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way". *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966); *Bizzett v. Brewer*, 262 N.W.2d 273, 277 (Iowa 1978); *State v. Kyseth*, 240 N.W.2d 671, 673 (Iowa 1976). Applying this standard to the facts before us we conclude that the initial questioning of the defendant was not custodial interrogation.

■ At the time of his initial interview with the defendant, agent Evilsizer had viewed enough of the fire scene to suspect arson, but had not eliminated the possibility that the fire may have been set by one of defendant's two young children or another person. There is no indication in the record that the defendant was taken into custody or otherwise deprived of her freedom of action during the questioning. Nor did the trial court make such a finding. We hold that on this record the trial court erred in suppressing statements made by the defendant to agent Evilsizer on February 2.

■ A somewhat different situation is presented by the questioning which took place in the public safety center on February 8. By this time defendant knew that she was suspected of arson and the meeting was for the purpose of discussing possible medical alternatives to the filing of charges. Although the discussion took place at the "stationhouse", the State argues that defendant was "voluntarily" present and accompanied by members of her family. She had not, at this time, been placed under arrest or taken into custody. The State would have us find this case to be akin to *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), where a voluntary appearance and questioning at a police station which led to the filing of charges was held not to be custodial interrogation.

We would find *Mathiason* to be dispositive of the early portion of the February 8 meeting were we to find defendant's presence to be voluntary. Because of the coercive atmosphere of the meeting, as indicated by the very subject to be discussed, the presence of the county attorney and his assistant, and the occurrence we describe below, we conclude that *Miranda* warnings should have been given and that evidence of statements made at that time by the defendant were properly suppressed. At one point early in the interview, the record not indicating exactly when, agent Evilsizer stated that if the defendant were not going to be cooperative he would leave and file charges. We believe that this threat was indicative of the fact that defendant had suffered a substantial deprivation of her freedom of action resulting in the questioning being custodial interrogation. The defendant was placed in the dilemma of either incriminating herself in hope of obtaining medical treatment or being taken into custody. In facing such a situation the defendant should have been made aware of her constitutional rights as mandated by *Miranda*. By this time the interrogation had become custodial, as would all questioning subsequent to February 8. We are thus constrained to hold that the trial court did not err in suppressing evidence of statements made by the defendant after the initiation of custodial interrogation.

V. This appeal comes to us before trial evidence has been presented. Nothing in

this opinion is intended to be dispositive of any issues, such as the voluntariness of defendant's statements, which may arise at trial other than those which are directly presented by the appeal and addressed in this opinion.

In summation we hold: (1) defendant's motion to suppress was timely filed pursuant to Iowa R.Crim.P. 11; (2) evidence which was the product of warrantless searches of the fire scene was properly suppressed by the trial court; (3) the initial interview with the defendant did not constitute custodial interrogation and was therefore not subject to suppression; and (4) the February 8 meeting had become custodial interrogation and all subsequent statements were subject to suppression.

This case is therefore affirmed in part, reversed in part, and remanded for further proceedings in conformity with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.