**Robert A. PASSERIN, Defendant, Appellant,**

v.

**STATE of Delaware, Plaintiff, Appellee.**

Supreme Court of Delaware.

Submitted Sept. 17, 1979.

Decided June 26, 1980.

Submitted on Motion for Reargument Aug. 13, 1980.

Revised on Motion for Reargument Sept. 23, 1980.

Carl Schnee of Schnee & Castle, P. A. (argued), Wilmington, for defendant, appellant.

Gary C. Linarducci, Deputy Atty. Gen. (argued), Wilmington, for plaintiff, appellee.

HORSEY, Justice:

Defendant, Robert A. Passerin, appeals his jury trial conviction in 1978 of five counts of arson in the second degree and one count of solicitation in the second degree arising out of a fire which occurred on September 28, 1975 at defendant's place of business in New Castle County, Delaware. Defendant was convicted and sentenced to ten years incarceration for one count of arson and a total of 24 years suspended sentence and 24 years of probation for the remaining counts. Among the numerous issues raised by defendant on appeal, he contends that his convictions were based on testimony and evidence obtained during warrantless searches of his business premises in violation of rights guaranteed to him by the Fourth Amendment. We agree and therefore reverse and remand for new trial.

I

About 8:00 a. m. on Sunday, September 28, 1975, a fire was reported at the Wrangle Hill Industrial Park in a large building housing defendant's construction business and that of five other concerns, each of which occupied separate units under lease. Firemen arrived at the scene promptly and within an hour had extinguished the fire—but not before much of the structure, including defendant's unit and its contents, had been destroyed and four other units extensively damaged. The contents of defendant's unit included several cars and trucks used by defendant in his business.

Shortly after the fire had been extinguished, a State Deputy Fire Marshal, David Kiley, arrived at 9:00 a. m. at the scene to investigate the origin and cause of the fire. This was his duty as defined by statute, 16 *Del.C.* § 6607(f).[1] To this end, Kiley interviewed witnesses, examined the fire damaged remains, made drawings and notes and took photographs. Kiley's investigation lasted some three hours, and he then left the premises about mid–day on the day of the fire. That evening Kiley contacted a fellow Deputy State Fire Marshal, Richard Lynch, discussed the fire, his investigation and his findings with Lynch; and the two of them decided to return to the fire scene the following morning.

At 9:00 a. m. on Monday, September 29, 1975–approximately 24 hours after the fire had been extinguished–Kiley returned to the fire damaged premises with Lynch. They brought with them several other fire investigators and a photographer. They combed the debris, took further photographs, interviewed witnesses, including the owners of the other businesses occupying the premises, and recorded their observations. They did not interview Passerin.

Lynch testified that by mid–morning or within a few hours of his arrival at the scene, he had concluded that the fire had begun in defendant's unit of the building; that the fire had spread exceedingly fast and in an unnatural manner; that a flammable liquid, probably fuel or diesel oil, had been used as an "accelerant"; and that the fire had been intentionally set. The source of the diesel oil was also presumed to be a tank truck within defendant's unit which Kiley had inspected the day before and had found to contain diesel oil but less than a full tank.[2]

---

1. 16 *Del.C.* § 6607, in pertinent part, directs the State Fire Marshal or his deputies:

    "(a) [to] enforce all laws . . . having to do with:
    (1) Prevention of fires;

    \*   \*   \*   \*   \*   \*

    (5) The suppression of arson."
    and otherwise provides:
    "(f) The State Fire Marshal, or his Deputy or Deputies, may at any time investigate as to the origin or circumstances of any fire or explosion occurring in the State and may at all reasonable hours enter any building or premises within his jurisdiction for the pur-

pose of making an inspection or investigation, which, under the provisions of this chapter, he may deem necessary to be made."

2. Kiley did not testify as to what findings, conclusions or opinions he reached on Sunday (or thereafter) as to the origin or cause of the fire or as to whether it was accidental or incendiary. Kiley's testimony was confined to that of a fact witness and was limited to his initial inspection and investigation made on Sunday, September 28.

Lynch also determined the fire to have been started in two areas of defendant's premises, that is in the vicinity of two cars that had suffered unusually severe front–end damage to their radiators and bumpers. Lynch believed that diesel oil had been poured onto the concrete floor under the cars and then ignited. However, he was unable to examine the floor beneath the cars without first removing the cars. Thus, arrangements were made to bring in a mobile crane Monday afternoon or Tuesday morning.

On Tuesday, Kiley and Lynch returned to defendant's premises and, with the use of a crane, removed the two cars from defendant's unit. This enabled them then to examine the concrete floor beneath the vehicles–which they found to be crumbled or "spalled"–a condition which Lynch attributed to the fire's extreme heat resulting from the ignition of diesel oil after it was poured on the concrete floor under the cars.

By Tuesday, September 30, Lynch and Kiley had largely completed their investigation; but they returned to defendant's premises on Wednesday and Thursday for further investigation and also asked the state police for assistance to determine ownership of the burned vehicles within defendant's unit.

Over the four or five day period of the investigation, defendant's fire damaged premises had been cordoned off and no one except the fire investigators was permitted access to defendant's unit. Passerin confirmed that he had been denied access to his premises to inventory his loss until after the State Fire Marshal's Office had completed its investigation of the fire on Thursday or Friday following the fire.

The State's case also included: evidence that several months before the fire defendant had increased his fire insurance coverage; a contention that defendant's business was in financial straits' and testimony of an erstwhile friend of defendant, under an agreement of immunity, that defendant told him the night before the fire that he had employed an undisclosed third party to burn his property.

No search warrants were sought and obtained by the State Deputy Fire Marshals or by the State Police before their entries upon defendant's premises and their searches and seizures of evidence found thereon.

Indicted in May, 1976, defendant was tried and found guilty in June, 1977. This appeal proceeded in December, 1978, after denial of several post–trial motions.

## II

Relying upon *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), defendant contends that it was plain error for the trial court to have admitted any testimony or evidence obtained from entries and searches of defendant's fire damages premises made after Sunday, September 28, 1975, without the authority of a search warrant. Defendant contends that all evidence obtained by the State Deputy Fire Marshals from the re–entries and searches of defendant's premises on Monday, September 29, 1975 and subsequent days must be suppressed as violative of defendant's Fourth Amendment rights. Such evidence includes: (1) all testimony of Deputy Fire Marshal Lynch as to his investigation, findings and opinions from his warrantless entries subsequent to the day of the fire; (2) all photographs and drawings of physical evidence and testimony of all witnesses based thereon that resulted from searches subsequent to the day of the fire; (3) any testimony of Deputy Fire Marshal Kiley other than that related to his searches, findings and opinions based on his initial investigation of the fire on Sunday, September 28; and (4) testimony of police officers based on any later search of the premises at the request of Lynch or Kiley.

### A.

In *Michigan v. Tyler*, the United States Supreme Court established reasonably definitive guidelines as to the lawfulness of warrantless entries and searches of fire damaged premises by duly authorized fire officials to determine a fire's cause, stating:

"In summation, we hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches. See *Camara* [*v. Municipal Court*], *supra*, 387 U.S. [523] at 534–539, 87 S.Ct. [1727] at 1733–1736, [18 L.Ed.2d 930], *See* [*See*] *v. Seattle, supra,* 387 U.S., at 544–545, 87 S.Ct., at 1739–1740; *Marshall v. Barlow's, Inc., supra,* 436 U.S. [307] at 319–321, 98 S.Ct. [1816], at 1824–1825 [56 L.Ed.2d 305]. Evidence of arson discovered in the course of such investigation is admissible at trial, but if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684." 436 U.S. at 511–12, 98 S.Ct. at 1951.

The State contends that defendant waived any right to raise on appeal the issue of the validity of the warrantless searches by failing to object at trial to the admissibility of such evidence; and that admitting such evidence was not plain error because the rule in *Michigan v. Tyler* was not announced until nearly a year after defendant's trial and during the pendency of this appeal.

Defendant responds that the ruling in *Tyler* does not represent new law but merely an application or extension to fire investigators of established law placing limitations on warrantless searches and seizures made by governmental officials for administrative purposes, citing *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

## B.

Our starting point is, of course, the Fourth Amendment's unequivocal declaration that persons, their premises and contents shall be safeguarded against unreasonable searches and seizures and its requirement that warrants issue upon probable cause for such searches to be lawful. The difficulty comes with translating this fundamental and "abstract prohibition against 'unreasonable searches and seizures' into workable guidelines for the decision of particular cases...." *Camara v. Municipal Court,* 387 U.S. at 528, 87 S.Ct. at 1730 (1967).

In *Camara* and its companion, *See,* the previous generally unquestioned authority of authorized governmental officials to make warrantless administrative searches of private premises to determine their compliance with fire, safety and health codes was re-examined. Until 1967, administrative searches were considered to be excluded from the ambit of the Fourth Amendment on the reasoning that such entries were for essentially regulatory and civil purposes–usually to carry out inspections felt to be a crucial part of a regulatory scheme. *Frank v. State of Maryland,* 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959).[3]

Overruling *Frank,* the Court in *Camara* upheld a homeowner's refusal to permit a warrantless inspection of his residence by a municipal public health inspector making a routine annual inspection for determining possible violations of the city's housing code. While conceding that such a routine inspection was "a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime," the Court held "that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment" when conducted without resort to warrants. 387 U.S. at 530, 534, 87 S.Ct. at 1733. *See* extended the *Camara*

---

**3.** *Frank* upheld by a five to four vote a state court conviction of a homeowner who refused to permit a municipal health inspector to enter and inspect his premises without a search warrant.

ruling to include commercial or business properties.

The Court in *Camara* and *See* found that no meaningful distinction could be made between constitutional protections afforded private citizens as to civil administrative and criminal searches.[4] But, the Court recognized that in the case of either an administrative or a criminal search, exigent circumstances justify a warrantless search, stating that its warrant requirements as to administrative searches did not "foreclose prompt inspections, even without a warrant, that the law has traditionally upheld in emergency situations." 387 U.S. at 539, 87 S.Ct. at 1736.

### C.

In this State the statutory authority conferred upon the State Fire Marshal to investigate a fire on private premises is broadly stated. Under 16 *Del.C.* § 6607(f), supra, he or a deputy may:

> ". . . at any time investigate as to the origin or circumstances of any fire or explosion occurring in the State and may at all reasonable hours enter any building or premises within his jurisdiction for the purpose of making an inspection or investigation, which, under the provisions of this chapter, he may deem necessary to be made."

However, the authority thereby conferred was held to be subject to Fourth Amendment constraints well before the trial of this case. *Steigler v. Anderson*, 3d Cir., 496 F.2d 793 (1974). Holding that a warrantless entry and search by a state deputy fire marshal of private residential premises made while firemen were still fighting the fire did not violate defendant's Fourth Amendment rights, the Court stated:

> "Regardless of state authority, the acts of state officials are judged by federal standards when fourth amendment violations are plain. E. g., *Elkins v. United States*, 364 U.S. 206, 223, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Thus, even though Lynch[5] had authority under state law to investigate the cause of the fire, the question remains whether the fourth amendment required that he first obtain a search warrant." *Steigler v. Anderson*, 3d Cir., 496 F.2d at 796 (1974). (footnote added)

The Court previously stated:

> "While searches and seizures must generally be undertaken by state officials only after obtaining a search warrant, the Supreme Court has recognized a number of situations in which a warrantless search may be lawful. In each of these situations the Supreme Court found exigent circumstances rendering imperative official action without first obtaining a warrant. We believe a similar situation existed in the present case." 496 F.2d at 795 (footnote omitted)

The previous year a similar ruling as to warrantless searches by fire investigators was reached in *United States v. Gargotto*, 6th Cir., 476 F.2d 1009 (1973). There the Court upheld a warrantless search of private premises made by a fire investigator simultaneously with firemen's suppression of a fire and their seizure of papers inadvertently found in plain view. However, the Court also ruled that whether the exigency that justified the initial warrantless entry and seizure of items in plain view extended to the seizure of additional papers found within desks and cabinets upon defendant's premises required a further evidentiary hearing.[6] Similarly, in *Steigler*, the Court was careful to confine its holding to the facts before it, stating that it was not faced with the question of a fire marshal's warrantless entry and search of premises to determine the "cause of a fire several hours or days after the fire." 496 F.2d at 796.

---

4. However, as to the former, the Court relaxed the standard for a search warrant to issue to substantially less than the "probable cause" requirement of a criminal proceeding.

5. the same individual here involved

6. Following remand, an evidentiary hearing, and appeal, the 6th Circuit affirmed the trial court's finding of exigent circumstances, due to the danger of immediate destruction of the papers through water damage. *U. S. v. Gargotto*, 6th Cir., 510 F.2d 409 (1974).

State decisional law had even anticipated *Camara* and *Tyler*. In *State v. Buxton*, 238 Ind.Supr. 93, 148 N.E.2d 547 (1958), evidence seized in a warrantless follow–up search of a fire damaged home by a deputy fire marshal acting pursuant to a statute very similar to 16 *Del.C.* § 6607(f) was held inadmissible as violative of defendant's Fourth Amendment rights. Finding the investigation to have turned from that of a "mere civil inspection" to that of "obtaining incriminating evidence," the Court ruled a search warrant was necessary. 148 N.E.2d at 551. And in *Bennett v. Commonwealth*, 212 Va.Supr. 863, 188 S.E.2d 215 (1972), a state fire marshal's initial warrantless entry and search of fire damaged premises in a rural area made the morning after a night time fire was held to be within the exigency exception stated in *Camara*.[7]

▋ Thus, even before *Camara*, Fourth Amendment rights as to administrative searches were being recognized and well before the trial of this case the legal parameters of warrantless administration searches of private premises to determine a fire's cause were being defined on a case–by–case basis. Hence, we agree with defendant that the Fourth Amendment concepts underlying *Michigan v. Tyler* were applicable to the instant case; and under *U. S. v. Schleis*, 8th Cir., 582 F.2d 1166 (1978) such constitutional rights were subject to retroactive application. Thus, despite defendant's failure to object at trial, the admission of the evidence resulting from the warrantless searches constituted plain error which this Court is required to recognize unless such searches come within Tyler's guidelines as to a reasonable search. See *Henry v. State*, Del.Supr., 373 A.2d 575 (1977); *Ward v. State*, Del.Supr., 366 A.2d 1194

(1976); Superior Court Criminal Rule 52(b). Compare *Goddard v. State*, Del.Supr., 382 A.2d 238 (1977).

### D.

In *Tyler* the Court declined to set precise standards as to when a warrantless entry by duly authorized fire investigators ceases to be reasonable and becomes subject to Fourth Amendment constraints, beyond stating that what constitutes a reasonable time to investigate depends upon the exigencies of the particular case and the individual's reasonable expectation of privacy. Stating what previous courts had already ruled, the Court added:

"The circumstances of particular fires and the role of firemen and investigating officials will vary widely. A fire in a single–family dwelling that clearly is extinguished at some identifiable time presents fewer complexities than those likely to attend a fire that spreads through a large apartment complex or that engulfs numerous buildings. In the latter situations, it may be necessary for officials–pursuing their duty both to extinguish the fire and to ascertain its origin–to remain on the scene for an extended period of time repeatedly entering or re–entering the building or buildings, or portions thereof. In determining what constitutes a "reasonable time to investigate," appropriate recognition must be given to the exigencies that confront officials serving under these conditions, as well as to individuals' reasonable expectations of privacy." 436 U.S. at 510, n.6, 98 S.Ct. at 1950.

Under the facts [8] as found in *Tyler*, the Court concluded that warrantless early

---

7. In *People v. Kulick*, 57 Mich.Ct.App. 126, 225 N.W.2d 709 (1975), an arson investigator's warrantless re–entry of fire damaged premises the morning after a night time fire of suspicious origin was upheld as only a "continuation" of the original valid warrantless search. However, the Court relied upon reasoning later to be rejected by the Michigan Supreme Court in *Tyler*. See also *People v. Patrick*, 41 Ill.App. Ct.3d 1037, 355 N.E.2d 224 (1976) and *People v. Calhoun*, N.Y.Supr., 90 Miss.2d 88, 393 N.Y. S.2d 529 (1977).

8. In *Tyler*, the fire occurred at defendant's place of business shortly before midnight and was extinguished by 2:00 a. m., when the fire chief arrived to investigate as to the fire's cause. Finding evidence of arson in plain view (plastic containers of flammable liquid), the fire chief summoned a police detective to investigate for possible arson. Together they searched the premises until 4:00 a. m. when they were forced to suspend their investigation due to steam and smoke. At 8:00 a. m. the same morning they returned; found that they

morning re–entries of the fire damaged premises within four hours after the initial investigation was forced to be suspended due to steam, smoke, and darkness were "no more than an actual continuation of the first [entry], and the lack of a warrant thus did not invalidate the resulting seizure of evidence." 436 U.S. at 511, 98 S.Ct. at 1591. However, all re–entries after the day on which the fire was extinguished were found to be "clearly detached from the initial exigency and warrantless entry" and hence invalid since conducted without consent and without valid warrants.[9]

■ Applying the standard articulated in *Tyler* to the facts of the instant case, we think it clear that the Deputy Fire Marshals' re–entry of defendant's premises on Monday, September 29, nearly 24 hours after the fire had been extinguished and some 21 hours after Kiley had voluntarily terminated his initial investigation, was "clearly detached from the initial exigency and warrantless entry" made by Kiley on the day of the fire. Hence, it and all later re–entries cannot reasonably be said to have been "no more than an actual continuation" of the first entry. As a consequence, all testimony and evidence based on such warrantless re–entries of defendant's premises must be held to have been illegally obtained and hence inadmissible at trial.

Post–*Tyler* decisions reinforce this result. See *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (sustaining an initial warrantless search of premises by police in the belief that a life was threatened and to remove seriously injured persons but holding invalid a warrantless re–entry and search made shortly thereafter by homicide detectives which continued for four days). In *United States v. Moskow*, 3d Cir., 588 F.2d 882 (1978), upholding a warrantless entry by police and fire investiga-

tors of private premises believed to be threatened by fire as made under exigent circumstances, the Court stated that *Michigan v. Tyler* drew "an important distinction between extinguishing a fire and lingering for a reasonable time to investigate the cause, on the one hand, and making additional entries later to investigate the causes, on the other. A warrant is required under the latter circumstances." 588 F.2d at 892. See also *Schultz v. State*, Alaska Supr., 593 P.2d 640 (1979) (approving a fire inspector's warrantless entry and search for cause of fire shortly after a fire was brought under control, but avoiding a direct ruling on the reasonableness of a second search of the premises made later that afternoon) and *State v. Eacret*, Or.Ct.App., 40 Or.App. 341, 595 P.2d 490 (1979) (reversing a manslaughter conviction for failure of trial court to suppress evidence seized in a warrantless re–entry of premises by police 14 hours after the original entry).

For the reasons stated, we hold that defendant's convictions must be reversed because based on evidence obtained in violation of defendant's Fourth Amendment rights.

### III

■ Since we have found defendant to be entitled to a new trial on Fourth Amendment grounds, we need not consider errors assigned to the conduct of the trial itself, as these errors, if any, are mooted by granting a new trial. We need only consider one of defendant's remaining grounds for reversal–namely, that he may not be charged with multiple counts of arson when only one fire had been allegedly set–even though five separately occupied building units, including defendant's, were burned. Defendant argues that since only one fire occurred–albeit that it burned five separately

---

needed additional equipment; and departed–to return an hour later to continue their investigation. Some three weeks later state police arson investigators returned to the scene to take photographs and make a further investigation.

9. The Michigan Supreme Court in *Tyler* had ruled invalid all warrantless re–entries of the premises made after the blaze had been extinguished and the initial fire investigation had ended at 4:00 a. m. *People v. Tyler*, Mich. Supr., 399 Mich. 564, 250 N.W.2d 467 (1977).

occupied units–it supports only one charge of arson in the second degree in the same fashion as only one count of solicitation to commit arson was lodged against defendant.[10] In effect, defendant contends, one match, one arson.

To support this result defendant says that our courts, and others,[11] have drawn a distinction between crimes of violence against persons and offenses against property in determining when multiple counts or offenses arising out of a single act or transaction may be permitted. Defendant relies upon *Reader v. State*, Del.Supr., 349 A.2d 745 (1975) where we held that only one theft count, not multiple counts, lay for the taking of property of several owners in the course of a single burglary. In contrast, multiple criminal counts were permitted in a single criminal transaction where harm resulted to several persons. *McCoy v. State*, Del.Supr., 361 A.2d 241 (1976) (upholding two kidnapping counts against a defendant as to the two occupants of a car which defendant had commandeered); and *Kile v. State*, Del.Supr., 382 A.2d 243 (1978) (multiple counts of criminally negligent homicide sustained where defendant's single act of negligent driving resulted in the death of several persons).

However, defendant overlooks our rationale for the holding in *Reader* which was not simply that a crime against property was involved but that ownership was not an element of the crime of theft. Rather, the taking and exercise of control over property belonging to another was the gravamen of the offense. Hence, only one theft had

been committed though the property of several owners was involved.[12] Thus, one must look to the substance of the crime to determine whether a single criminal act may support a single or multiple charges.

The flaw in defendant's argument is his failure to apply his thesis to the crime of arson. Thus, our starting point must be the statute in question. 11 *Del.C.* § 802(a) provides:

> "A person is guilty of arson in the second degree when he intentionally damages *a building* by starting a fire or causing an explosion." (emphasis added)

11 *Del.C.* § 222(1) then defines "building" as follows:

> " 'Building' in addition to its ordinary meaning, includes any structure, vehicle or watercraft where a building consists of 2 or more units separately secured or occupied, each unit shall be deemed a separate building."

The gravamen of arson in the second degree is the "intentionally damag[ing] [of] a building by starting a fire or causing an explosion"; and under § 222(1) each unit of a building which "consists of two or more units separately secured or occupied . . . shall be deemed a separate building." Further, we have the Commentary on § 802, stating, "Section 802 proscribes any intentional damaging of a building (as defined in § 222) by starting a fire or causing an explosion." See also the Commentary to § 801, arson in the third degree, stating, in part:

---

10. The five arson counts severally charged defendant with intentionally damaging the buildings of each of five tenant–occupants of the industrial park structure. Count one reads:

 "Robert A. Passerin, on or about the 28th day of September, 1975 in the County of New Castle, State of Delaware, did then and there intentionally damage the building of Robert A. Passerin, trading as State Contracting, Inc., located at Wrangle Hill Industrial Park by starting a fire therein."

 Counts, two, three, four and five charged defendant in exactly the same language as count one except to refer to the "building" of each of the other four tenants. The solicitation to commit arson count charged defendant with solicit-

ing an unknown third person "to engage in conduct constituting a felony of arson second degree to the premises known as Wrangle Hill Industrial Park."

11. See *People v. Bauer*, Cal.Supr., 1 Cal.3d 368, 82 Cal.Rptr. 357, 461 P.2d 637 (1969) and *Commonwealth v. Lockhart*, 223 Pa.Super. 60, 296 A.2d 883 (1972).

12. In *McCoy*, we distinguished *Reader*, stating: "The rule of the *Reader* case is not controlling. Where, as here, a singular or continuous act or transaction involves a crime of violence against different persons, separate charges are permissible." 361 A.2d at 243.

"The crime defined in § 801 occurs when the actor intentionally starts a fire or causes an explosion whereby a building is recklessly damaged. . . . Any building, as defined in § 222, is covered, and that definition is broad enough to encompass the special cases of burning which were separately treated in the former law."

It seems clear to us that the legislature intended by our arson statutes to provide for just the situation at hand whereby five separately occupied units, i. e., buildings, have been damaged by the starting of a fire. Hence we agree with the Court below that "the legislative intent was to establish separate offenses for each unit of a building that is separately secured or occupied, and set on fire or damaged by an explosion."

Affirmed in part; otherwise reversed and remanded for new trial.

*Upon Motion for Reargument*

■ By motion for reargument, the State seeks remand of the case to the Trial Court with instructions that it take further testimony to enlarge the record as to the facts surrounding the warrantless searches and seizures made subsequent to September 28, 1975, the day the fire was extinguished. The State says that such additional evidence will establish that the searches and seizures made by the fire investigators and others were not in violation of *Michigan v. Tyler, supra*, and/or that the evidence obtained was admissible under other controlling authorities.

The State argues that if defendant had asserted a Fourth Amendment objection at trial, the State would have offered evidence to establish; that under the terms of defendant's lease of the premises, defendant lacked standing to object to the search and that the landlord granted any necessary consent; that the exigency of a warrantless search extended at least to September 29, 1975; and that since the search was an administrative search under color of law, the evidence obtained was admissible under *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

The State further contends that there are significant factual differences between this case and *Michigan v. Tyler, supra*, that it should be permitted to develop, and that the State should not be required to re–try the entire case in order to raise issues that would have been developed at trial but for defendant's own inaction. However, as we previously stated, the State was on fair notice before trial that Fourth Amendment rights apply to administrative searches. Hence, if defendant erred in not asserting his rights, the State likewise erred in failing to justify its warrantless searches.

We agree that the State should not be precluded at retrial from presenting evidence to justify the warrantless searches and seizures or to bring the case within one of the recognized exceptions to the requirement of a warrant and the rule made explicit by *Michigan v. Tyler, supra*. However, we cannot agree that it would be proper to permit the State to introduce such evidence through a limited remand to the Trial Judge. To do so would, in our view, bifurcate the case and deny defendant his right to jury determination of factual issues or mixed questions of fact and law.

The motion for reargument is denied.