STATE of Delaware, Plaintiff
Below, Appellant,

v.

Robert A. PASSERIN, Defendant
Below, Appellee.

Supreme Court of Delaware.

Submitted June 14, 1982.

Decided July 7, 1982.

Fred S. Silverman (argued), Deputy Atty. Gen., Wilmington, for plaintiff-appellant.

Clifford B. Hearn, Jr., Wilmington (argued), for defendant-appellee.

Before HERRMANN, C. J., and McNEILLY and MOORE, JJ.

MOORE, Justice:

Pursuant to 10 *Del.C.* § 9902(b)&(c), the Attorney General has appealed an order of the Superior Court suppressing certain evidence obtained by deputies of the State Fire Marshal during a series of warrantless and nonconsensual searches of defendant's business premises.[1] This matter has been here previously. In 1978 Robert A. Passerin was convicted in the Superior Court of the State of Delaware on five counts of arson in the second degree,[2] and one count of solicitation in the second degree.[3] This Court reversed the defendant's convictions and ordered a new trial based upon the decision of the Supreme Court of the United States in *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), and the record establishing that Passerin's convictions were obtained by the use of evidence procured during a series of warrantless and nonconsensual searches of Passerin's business premises in which he had a reasonable expectation of privacy.[4] On remand the State was granted leave to present additional evidence showing that the challenged searches came within one of the exceptions to the requirement of a search warrant recognized in *Michigan v. Tyler, supra.*[5]

Following a suppression hearing before the Superior Court, the trial judge found that the State offered no new substantive evidence to support the searches, and reluc-

1. 10 *Del.C.* § 9902. Appeal as of right ....
"(b) When any order is entered before trial in any court suppressing or excluding substantial and material evidence, the court, upon certification by the Attorney General that the evidence is essential to the prosecution of the case, shall dismiss the complaint, indictment or information or any count thereof to the proof of which the evidence suppressed or excluded is essential. Upon ordering the complaint, indictment or information or any count thereof dismissed pursuant to the Attorney General's certification, the reasons of the dismissal shall be set forth in the order entered upon the record."
"(c) The State shall have an absolute right of appeal to an appellate court from an order entered pursuant to subsection (b) of this section and if the appellate court upon review of the order suppressing evidence shall reverse the dismissal the defendant may be subjected to trial."

2. 11 *Del.C.* § 802. "(a) A person is guilty of arson in the second degree when he intentionally damages a building by starting a fire or causing an explosion."

3. 11 *Del.C.* § 502. "A person is guilty of criminal solicitation in the second degree, when intending that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes or otherwise attempts to cause the other person to engage in conduct which would constitute the felony or an attempt to commit the felony, or which would establish the other's complicity in its commission or attempted commission."

4. *Passerin v. State*, Del.Supr., 419 A.2d 916, 925 (1980).

5. *Passerin v. State*, 419 A.2d at 925.

tantly granted the defendant's motion to suppress the evidence thereby obtained. We agree and affirm.

## I.

The basic facts are stated in this Court's prior opinion.[6] However, a review of them is pertinent to the State's contention that it did present "new" evidence establishing that Passerin's landlord consented to the searches and seizures conducted by deputies of the State Fire Marshal.

Defendant's construction company, State Contracting Company Inc., was one of several businesses leasing space in a large warehouse owned by Homestead Builders Inc. Each of the businesses occupied, a separate self-contained unit within the warehouse, with its own lockable entrance. Defendant spent much of his time there, managing the business from an office trailer. When defendant's company took possession of its warehouse lot, the locks were changed on all the doors, thereby assuring that equipment, business records, and personal effects of the defendant and his related companies would remain private from outside intrusion or observation. The defendant's premises were not exposed to the view of the general public, or to the view of those operating the other businesses occupying the warehouse. Defendant's lot was a self-contained unit with walls separating it from the other businesses, preventing any uninvited observation by outsiders. Defendant and his employees were in exclusive possession of the lot, and even the landlord was excluded except for those occasions when defendant himself requested that repairs or maintenance work be done.

At approximately 8:00 a. m. on Sunday, September 28, 1975, a fire was reported at the warehouse. The fire was promptly brought under control and extinguished, but the building was almost completely destroyed. Deputy Fire Marshal Kiley arrived around 9:00 a.m. and began an investigation into the cause of the blaze, including interviews of witnesses, examination of the fire damage, preparation of drawings and notes and the taking of photographs. He did not have a search warrant.

At about 12:00 noon, Kiley left the scene, concluding it was impossible to finish his investigation because of water on the floor, hot spots, and smoldering areas that made the building unsafe. Indeed, at approximately 3:00 p. m. that afternoon the fire rekindled, but was quickly extinguished. Significantly, the State conceded in the trial court that when Kiley left the premises at noon on Sunday, September 28, he had probable cause to suspect arson. Moreover, Kiley admitted that although he never did anything to obtain a search warrant, he knew that the justice of the peace or magistrate courts, where such a warrant could be obtained, were open.[7]

At oral argument the State also admitted that by Monday and on each of the three succeeding days during which these warrantless and nonconsensual searches occurred, the conditions that prevented Kiley from completing his investigation on Sunday no longer existed. It is also significant that at the time Kiley left the scene at noon on Sunday he ordered the landlord to take possession of the premises. In obedience to this order the landlord locked the exterior gate to the overall grounds and posted a guard there. The State concedes that with the premises thus secured, there was no danger of any evidence being lost.[8]

---

**6.** *Passerin v. State*, 419 A.2d at 918–919.

**7.** 11 *Del.C.* § 2304 provides:

"*Persons authorized to issue search warrants.* Any Judge of the Superior Court, the Court of Common Pleas, the Municipal Court for the City of Wilmington, or any justice of the peace, or any magistrate authorized to issue warrants in criminal cases may, within the limits of their respective territorial jurisdictions, issue a warrant to search any person, house, building, con-

veyance, place or other thing for each or any of the items specified in § 2305 of this title."

**8.** These facts put to rest the State's "scare" argument that irrespective of constitutional limits, unless the State Fire Marshal is granted unbridled right to re-enter a premises at will, his representatives will otherwise be required to incur unnecessary personal danger in order to conduct warrantless searches during the course of a fire. At best this is a non-sequitur which ignores the real powers enjoyed by the

On Sunday evening Kiley advised Senior Deputy Fire Marshal Richard Lynch of his findings from the investigation he had conducted that day, and both decided to return to the premises the next morning, Monday, September 29, 1975.

At about 9:00 a. m. on Monday morning Kiley and Lynch, accompanied by several investigators and a photographer, returned to the scene. They combed the debris, took more photographs, interviewed witnesses, including the owners of other businesses, recorded their observations, but did not interview the defendant Passerin. Lynch testified that by mid-morning or within a few hours of his arrival on Monday, he too suspected arson. Lynch believed that the fire started under two cars, where diesel oil had been poured, but he could not examine the floor beneath them until the damaged cars were removed.

Another event of significance occurred on Monday morning. At approximately 7:00 a. m. Passerin appeared on the scene to begin work. He was initially prevented from entering by the landlord, but eventually was admitted. However, over Passerin's protests he was evicted from the premises by Kiley, who actually threatened Passerin with arrest unless he immediately departed. Thus, it was the State, not Passerin or his landlord, that actually controlled the premises.

On Tuesday, September 30, Kiley and Lynch again returned without a search warrant. This time they had a crane and removed the two cars from the area where Lynch had concluded the fire had been started. They then examined the damage to the floor caused by the heat of burning diesel oil. At this point Kiley and Lynch's investigation was practically over.

However, they again returned without a warrant on Wednesday, October 1 for further investigation, and did so again on Thursday, October 2. By now Passerin had been totally excluded from the premises by orders and threats by representatives of the State Fire Marshal for four days. The only persons who had been admitted were fire investigators, but not Passerin or even his landlord.

## II.

■ By the standards of the United States and Delaware Constitutions it is clear that in the face of exigent circumstances firemen and representatives of the State Fire Marshal may enter another's premises to suppress a fire and investigate its cause without first procuring a search warrant. *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978); *Passerin v. State*, 419 A.2d at 922; *Steigler v. State of Delaware*, Del.Supr., 277 A.2d 662, 666–667 (1971) *modified* 408 U.S. 939, 92 S.Ct. 2872, 33 L.Ed.2d 760 (1972); *Steigler v. Anderson*, 496 F.2d 793, 795–796 (3rd Cir. 1974) cert. denied, 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277. This is also a statutorily mandated duty of the State Fire Marshal.[9]

■ However, it is equally clear that where no exigent circumstances exist, and in the face of probable cause that a crime has been committed, the law is peremptory in its requirement that persons responsible for investigating the causes of fires first obtain search warrants before entering an-

State Fire Marshal and which are in no way diminished by an adherence to constitutional standards. Certainly, the State does not tell us how this investigation would have been prejudiced in any way if the agents of the State Fire Marshal had followed the law established by the General Assembly for obtaining a search warrant (11 Del.C. §§ 2301, et seq.), and thereafter proceeded with their four day investigation precisely as they did under conditions which they deemed safer than those which worried Kiley at the time of the fire and its extinguishment.

9. Under 16 *Del.C.* § 6607(f) the duties of the State Fire Marshal include:

"(f) The State Fire Marshal or his Deputy or Deputies may at any time investigate as to the origin or circumstances of any fire or explosion occurring in the State and may at all reasonable hours enter any building or premises within his jurisdiction for the purpose of making an inspection or investigation, which, under the provisions of this chapter, he may deem necessary to be made."

other's premises without proper consent. *Michigan v. Tyler*, 436 U.S. at 512, 98 S.Ct. at 1951.

While not policemen as such, the Deputy State Fire Marshals certainly knew that they were an arm of the law enforcement authorities by virtue of their statutorily mandated duties to investigate the causes of fires and to suppress arson.[10]

Nor can it be said that the Senior Deputy State Fire Marshal involved in this investigation was ignorant of his duty to obtain a search warrant, absent exigent circumstances or Passerin's consent. Senior Deputy Fire Marshal Lynch was the same investigator in both this case and in *Steigler v. Anderson*, where the United States Court of Appeals for the Third Circuit stated:

"Although Lynch was authorized by statute to investigate 'the origin or circumstances' of any fire in Delaware, we recognize this does not necessarily end our inquiry. Regardless of state authority, the acts of state officials are judged by federal standards when fourth amendment violations are claimed." (496 F.2d at 796, footnote omitted).

■ There is nothing novel in Delaware law that officials investigating suspected crimes must adhere to constitutional standards.[11] This mandate is further implemented by legislative directive.[12]

■ Thus, it is clear on this record that no exigent circumstances existed on the four days after the fire, even though the State now has been given two opportunities

to adduce evidence to support such a claim. Nothing in the record, as the lower court properly found, supports the suggestion that the repeated warrantless re-entries on the four days after the fire were in anyway based upon a continuation of the exigent circumstances existing at the time of the first entry on Sunday, and certainly as to which no warrant was required. *Passerin v. State*, 419 A.2d at 923.

■ Clearly, there was adequate time and opportunity for the State Fire Marshal's men to obtain a search warrant from a nearby Justice of the Peace Court. At best there is a suggestion of inconvenience, but constitutional and statutory guaranties must always prevail over mere convenience to the State Fire Marshal and his representatives.

Indeed, with the State's failure to prove exigent circumstances on Monday through Thursday, coupled with the State's admission that probable cause existed, based on Kiley's Sunday investigation, it follows that all of the later warrantless re-entries, and the evidence thereby procured, do not pass constitutional or statutory muster.

### III.

■ To overcome this the State now contends that these warrantless searches were consented to by Passerin's landlord, which thereby constitutes "new" evidence supporting the admissibility of the fruits of such searches. However, the trial court

---

10. 16 *Del.C.* § 6607 provides:

"(a) The State Fire Marshal, or his Deputy or Deputies, shall enforce all laws and ordinances of the State and the several counties, cities and political subdivisions thereof having to do with:

(1) Prevention of fires;

\* \* \* \* \* \*

(5) The suppression of arson;
furthermore;

"(g) The State Fire Marshal, or his Deputy or Deputies shall have the authority to issue subpoenas in the enforcement of this chapter."

11. *Del.Const.*, Art. I, § 6 provides: "§ 6. Searches and Seizures.

The people shall be secure in their persons, houses, papers and possessions, from unreasonable *searches and seizures; and no war*rant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation."

12. 11 *Del.C.* § 2301 provides:

"*Search to Accord with Statute or Constitution.*

No person shall search any person, house, building, conveyance, place or other thing without the consent of the owner (or occupant, if any) unless such search is authorized by and made pursuant to statute or the Constitution of the United States."

properly found that no such "new" substantive evidence existed. In order for the State to prevail on this argument, it must be shown that the landlord had either equal or greater control over the premises than the defendant. *See United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). But the evidence negates this.

■ To the extent that the landlord assumed "control" over the premises, he was clearly acting at the behest of, indeed upon the orders of the State. That the representatives of the Fire Marshal's office exercised sole dominion over the premises, and not the landlord, is demonstrated by the undisputed fact that for four days after the fire occurred they actually excluded the defendant (upon threat of arrest), the landlord and all other persons until the investigation was concluded.

■ These facts put to rest any claim that the landlord had re-entered the premises under a lease clause purporting to grant such a right in the event of the property's destruction. Furthermore, a third party's consent to a warrantless search cannot be implied from a mere property interest, since the authority justifying such consent is not derived from the law of property. Rather, it rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that the lessee anticipated such joint or superior control by the landlord. *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *United States v. Matlock, supra.*

The rights protected by federal and state law may not be eroded by strained applications of the law of agency or by unrealistic doctrines of apparent authority, or by subtle distinctions developed and refined by the common law in evolving the body of private property law, which has been shaped by distinctions, the validity of which is largely historical. *Stoner v. California*, 376 U.S. at 488, 84 S.Ct. at 892.

■ Moreover, the constitutional right which is involved here is that of the accused, not the landlord, *Stoner v. California*, 376 U.S. at 489, 84 S.Ct. at 893. The protection thus afforded would disappear if it were left to depend upon notions of control by a landlord over property which in reality is under the dominion of the State. Certainly, it cannot be said that a claim of possession by the landlord, who is acting under direct orders of law enforcement authorities as their agent, and who is himself excluded from the premises, justifies the consent upon which the State herein relies.

It follows that the findings and conclusions of the trial judge, based on his thoughtful analysis of the issues, were correct.

AFFIRMED.