Ryan R. SCOTT, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 475, 1994.

Supreme Court of Delaware.

Submitted: Jan. 25, 1996.
Decided: Feb. 15, 1996.

Bernard J. O'Donnell, Assistant Public Defender, Wilmington, for appellant.

Timothy J. Donovan, Jr., Deputy Attorney General, Department of Justice, Wilmington, for appellee.

Before VEASEY, C.J., HOLLAND, and BERGER, JJ.

HOLLAND, Justice:

Following a jury trial in the Superior Court, the defendant-appellant, Ryan R. Scott ("Scott"), was convicted of Trafficking in Cocaine, Possession with Intent to Deliver Cocaine, Conspiracy Second Degree, Maintaining a Dwelling for Keeping Controlled Substances, and Criminal Impersonation. Scott was sentenced, *inter alia*, to twenty years at Level V, suspended after four years for one year at Level IV, two years at Level III and thirteen years at Level II. This is Scott's direct appeal.

Scott has raised two issues in this appeal, both of which relate to the warrantless search of his girlfriend's apartment. First, Scott argues that before searching the apartment, the police were required to obtain his consent in addition to the consent of his girlfriend. Scott bases this contention on the fact that he was an overnight guest and present at the apartment at the time of the search. Alternatively, Scott argues that the police exceeded the scope of the girlfriend's consent by searching his duffel bag.

We have concluded that both of Scott's contentions are without merit. The Superior Court properly held that Scott's girlfriend's consent to search her apartment was valid and that the police did not exceed the scope of her authority by opening Scott's duffel bag. The judgments of the Superior Court are affirmed.

### Facts

Shortly after midnight on September 8, 1991, City of Wilmington police officers were dispatched to a specific apartment, in response to a complaint about a man with a gun. According to the report, the suspect was a black male named Brian with an injury to his left eye. When the police officers knocked on the door of the apartment, a man fitting the suspect's description answered the door. This man was Scott, although he identified himself to the officers as "Brian Smith." The officers asked Scott to step outside of the apartment.

While Scott was being detained outside of the apartment, an adult female came to the door. She identified herself as Tracy Jenkins ("Jenkins"). She told the police that it was her apartment.

The police explained to Jenkins that they had received a complaint regarding a man with a gun. The police asked Jenkins for permission to search her apartment for a firearm. Jenkins orally gave permission for the police to search the premises.

Jenkins also signed a standard written form indicating her consent to the search. The record reflects that one of the police officers read the contents of the form to Jenkins and allowed her to examine it. After reviewing the form, Jenkins stated to the police officer that she understood the form, and signed it.[1]

After securing Jenkins' consent, Officer Richard Sutton ("Officer Sutton") began a search of the premises, beginning with the master bedroom. He first looked in a dresser and a closet. Both were filled with women's clothing.

Officer Sutton then observed a blue duffel bag on the floor next to the dresser. The bag had no name tag or other identifying marks on the outside. It was zipped shut, but not locked. Upon opening the duffel bag, Officer Sutton observed a folded brown paper bag on top of the other contents. He testified that, upon picking up the bag, it felt heavy enough to possibly contain a weapon or ammunition. Officer Sutton then opened the bag and discovered numerous capped

---

1. Although the pre-printed portion of the form did not identify the specific purpose of the search, the completed form identified the investigation as one for an "unknown type firearm." The form contained an acknowledgement that the consenting individual had been advised of her right to refuse to permit the search and to require the police to obtain a judicially authorized search warrant. The form stated that consent could be withdrawn at any time. Finally, the form disclosed that evidence obtained as a result of the search could be used against the consenting individual or another in a criminal proceeding.

plastic vials, 180 in all, containing a white chalky substance later identified as cocaine.

Officer Sutton immediately contacted his supervising officer to inform him of the discovery. Jenkins was advised that, based on the discovery of illegal drugs in her apartment, she would be taken into custody. Jenkins then had to be physically restrained because she attempted to seize from the officers the consent form she had previously signed.

Officer Sutton continued his search. Returning to the duffel bag, he removed several items of men's clothing. At the bottom of the duffel bag, he located a wallet which contained a New York state driver's license identifying the defendant as Ryan Scott. The police next looked into another bedroom where three children were sleeping. The remaining areas of the apartment were also searched. The gun mentioned in the initial report to the police was never located.

Scott and Jenkins were both indicted on charges arising from the discovery of the drugs. Prior to trial, Scott moved to suppress the drugs which had been seized from the apartment without a search warrant. During the suppression hearing, Officer Sutton testified that at the time of the search, he believed that the apartment belonged to both Jenkins and Scott. Officer Sutton also testified that, during the course of the search, he observed mail sent to Scott at the apartment address.

Scott testified that Jenkins was his girlfriend and that she had leased the apartment. Scott admitted ownership of the duffel bag and its contents, except for the illegal drugs. Scott testified, however, that Jenkins was not allowed access to the duffel bag without his permission.

The Superior Court found that Jenkins had authority to consent to a search of the apartment; that her consent had been given knowingly and voluntarily; and that her attempt to withdraw her consent by tearing up the consent form, after the illegal drugs were discovered, came "too late." The Superior

Court also found that, since the police were searching for a firearm, it was appropriate for them to search containers which might conceal a firearm, such as the duffel bag. Accordingly, the Superior Court denied Scott's motion to suppress.

### Third Party Consent to Search
### Common Authority Over Premises

 The United States and Delaware Constitutions protect the right of persons to be secure from "unreasonable searches and seizures." U.S. Const. amend. IV; Del. Const. art. I, § 6. Searches and seizures are *per se* unreasonable, in the absence of exigent circumstances, unless authorized by a warrant supported by probable cause. *Hanna v. State*, Del.Supr., 591 A.2d 158, 162 (1991). A recognized exception to the warrant requirement, however, is for searches that are conducted pursuant to a valid consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 221–22, 93 S.Ct. 2041, 2044–45, 36 L.Ed.2d 854 (1973).

 To be valid, a consent to search must be voluntary. *Id.* The person giving such consent must also have the authority to do so. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). *DeShields v. State*, Del.Supr., 534 A.2d 630, 643 (1987) (citing *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974)). Third party authority to consent to a search must include both possession and equal or greater control, *vis-a-vis* the owner, over the area to be searched. *Ledda v. State*, Del.Supr., 564 A.2d 1125, 1128 (1989).[2]

### Scott's Presence
### Jenkins' Consent to Search

 The first issue in this appeal is whether Jenkins had authority to consent to a search of the apartment when Scott was present. The State has the burden of proving, by a preponderance of the evidence, that Jenkins' consent to search the apartment is valid. The State argues that Jenkins' consent was valid, because Scott neither coun-

---

2. *See State v. Passerin*, Del.Supr., 449 A.2d 192, 197 (1982) *(citing United States v. Matlock*, 415 U.S. at 171, 94 S.Ct. at 993). *See also Jenkins v.* *State*, Del.Supr., 230 A.2d 262 (1967). *Compare DeShields v. State*, Del.Supr., 534 A.2d 630, 643 (1987).

termanded her consent nor objected to the search of the apartment, pursuant to Jenkins' consent. *See Ledda v. State,* 564 A.2d at 1128.

Scott argues that he did not have a duty to countermand Jenkins' consent. According to Scott, his mere presence invalidated her authorization. Scott bases his argument on the following language in the *Matlock* decision: "consent of one who possesses common authority over premises or effects is valid as against the *absent,* nonconsenting person...." *United States v. Matlock,* 415 U.S. at 170, 94 S.Ct. at 993 (emphasis added).

■ Jenkins, as the legal tenant, had immediate possession and control over the apartment. Nevertheless, even if Scott was only an occasional overnight guest, he had a reasonable expectation of privacy in Jenkins' apartment. *Hanna v. State,* Del.Supr., 591 A.2d 158, 164 (1991) (citing *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)). Neither Scott's presence, nor his expectation of privacy, however, is *ipso facto* determinative of whether Jenkins' consent to search was invalid. *Ledda v. State,* 564 A.2d at 1128–29.

■ This Court has held that when a person with equal or greater authority to consent to a search is present, if a search is authorized by a third party, there is a duty to object. *Ledda v. State,* 564 A.2d at 1128–29. In this case, even though Scott was present, he failed to countermand Jenkins' consent at any time during the search. Jenkins had the authority to consent to the search of the apartment, in the absence of any objection by Scott. *Ledda v. State,* 564 A.2d at 1128–29. Assuming *arguendo* that Scott's authority to consent to a search was equal to Jenkins' authority, we hold that Scott's failure to object constituted his implied consent to the search authorized by Jenkins. *Id.*

### Jenkins' Consent Included Duffle Bag

Scott's related but alternative contention is that, if the oral and written consent to search the apartment given by Jenkins was valid, the search of his duffel bag was beyond the scope of the consent she extended. Scott acknowledges that the apartment was leased by Jenkins, and that she consented to a search of the apartment. Scott does not challenge the Superior Court's finding that Jenkins voluntarily consented to the search of the apartment. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

Officer Sutton testified that the dresser and closet in the master bedroom contained only female clothing, consistent with Jenkins' statement that it was her apartment. There was no external indication that the duffel bag belonged to Scott. Its location next to the dresser in the master bedroom was consistent with its ownership by Jenkins. *Cf. State v. Harris,* Del.Super., 642 A.2d 1242, 1248 (1993).[3] *Compare United States v. Gilley,* 608 F.Supp. 1065 (S.D.Ga.1985).

■ The record reflects that Jenkins signed a standard "consent to search" form. That consent form authorized the police to "conduct a complete and thorough search" of the apartment. In *Ledda,* this Court held that the scope of the search is determined by the language used in giving the consent. *Ledda v. State,* 564 A.2d at 1129. Accordingly, the scope of the search authorized by Jenkins' consent was as broad as the form indicates, *i.e.,* "a complete and thorough search" of the apartment. *Id.*

### Conclusion

The Superior Court properly held that Jenkins' consent to search her apartment for a firearm was valid. That consent was also sufficient in scope to allow the police to search items which might contain a firearm, including the duffel bag. *See DeShields v. State,* 534 A.2d at 642–44; *Florida v. Jimeno,* 500 U.S. 248, 252, 111 S.Ct. 1801, 1804,

---

3. In *Harris,* the Superior Court found that the defendant's mother had common authority over her son's bedroom. It determined, however, that she had no common authority over a locked toolbox found in her son's bedroom, because she did not have a key to the lock, and thus, had no access to its contents. Therefore, the Superior Court held that the defendant's mother lacked the requisite authority to consent to a search of the toolbox.

114 L.Ed.2d 297 (1991).[4] The Superior Court properly denied Scott's motion to suppress. The judgments of the Superior Court are AFFIRMED.

---

4. *Cf. United States v. Salinas–Cano,* 959 F.2d 861 (10th Cir.1992) (evidence seized from defendant's closed but unlocked suitcase should have been suppressed where police obtained consent from defendant's girlfriend to search her apartment, but asked her to point out defendant's belongings).